## G. G. GROOMS v. THE STATE.

No. 1731. Decided March 22, 1899.

**1. Forgery of a Deed—Venue of the Prosecution.**

Penal Code, article 553, authorizes the prosecution of forgery of land titles in either the county where the forgery was committed or in the county where the land involved in the forgery is situated. An indictment for such a forgery, alleging it in the county where the land was situate, will support a conviction, though the forged deed, as set out in said indictment, purports on its face to have been executed in another county.

**2. Change of Venue by Agreement—Jurisdiction.**

Article 553, Penal Code, confers jurisdiction in Travis County of all prosecutions for forgery of land titles, and inasmuch as Travis County has original jurisdiction in such cases, it would be competent, by agreement of parties, to transfer the same from another county to Travis.

**3. Change of Venue by Court of Its Own Motion to County Out of the District.**

Where a court, ex mero motu, changes the venue to a county not in his own nor in an adjoining district, it will be presumed, in support of the change of venue, that the same reasons for change of venue existed in said adjoining counties as existed in the county where the prosecution was instituted.

**4.  Forgery—Severance.**

On a trial for forgery, an application for severance from a party separately indicted, which alleged in general terms that the parties were indicted for the same transaction, may be controverted, and it is entirely competent for the State, in reply, to set up and establish by investigation that the transactions are different and distinct.

**5.   Secondary Evidence of a Deed or Writing—Photographic Copy.**

Before secondary evidence of the photographic copy of a deed or other writing can be resorted to, it must be shown that the copies are accurate. Such secondary evidence is admissible where the deed or writing is shown to be in the possession of the adverse party, and he has been duly notified to produce, and fails to produce, the original.

**6.   Same—Presumption as to Photographic Copies.**

Where an adverse party, in possession of the original deed or other writing, has been duly notified to produce, and fails to produce, the original, every intendment will be presumed in favor of the correctness of photographic copies of said deed or instrument.

**7.   Evidence—Handwriting—Standards of Comparison.**

Writings confessedly in the handwriting of defendant are proper standards of comparison on a trial for forgery.

**8.   Expert Evidence as to Handwriting.**

A witness who has qualified as an expert may testify as to handwriting; and where he is also shown to be familiar with the handwriting of the party, his competency to give his opinion is unquestionable.

**9.   Forgery of a Deed—Expert Evidence—Proof by Negative Pregnant.**

On a trial for forgery of a deed, it is entirely competent to attack the genuineness of the signature of the purported maker by negative pregnant proof of qualified experts as to his nonexecution of the deed, by proof that it was in the handwriting of the accused. And such proof is amply sufficient where the purported maker of the deed was unknown to any witness, and the State was unable to procure any direct testimony as to his handwriting.

**10.   Expert Evidence.**

The fact that some of the expert witnesses may have been shaken, as experts, in the cross-examination, does not go to the admissibility of their testimony, but rather to its strength.

**11.   Forgery—Defendant as a Witness—Cross-Examination as to Handwriting.**

On a trial for forgery, where an original paper on file in the district court in another case, and shown to have been written by defendant, has been already introduced as a standard of comparison of handwriting, Held, that on his cross-examination as a witness in his own behalf, it was competent and germane with reference to his examination in chief as to the forgery, to interrogate defendant with reference to his genuine writing in said original paper. This was neither introducing new matter on cross-examination, nor was it obnoxious to constitutional objection that it was compelling defendant to give evidence against himself.

**12.   Forgery—Suppression of Evidence by Defendant.**

On a trial for forgery, evidence which directly involves the suppression of the alleged forged deeds by the defendant is competent and admissible testimony against him.

**13.   Same.**

On a trial for forgery of a deed, it was competent for the State to prove that defendant admitted his possession of the original deeds, and stated "that he would not be damn fool enough to give them up."

**14.   Remarks by District Attorney.**

Upon objection by defendant's counsel to the introduction of the evidence, as stated in the foregoing paragraph, the district attorney remarked that his purpose was to put the original deeds in evidence. Held, the statement by the district attorney as to what his object was was not illegal or improper, it being made to appear that every legal effort was used by him to accomplish this purpose.

APPEAL from the District Court of Travis, on a change of venue from Atascosa. Tried below before Hon. R. E. BROOKS.

Appeal from a conviction for forgery; penalty, six years imprisonment in the penitentiary.

The indictment charged appellant with the forgery of a deed of the tenor following:

*"State of Texas, Bexar County.*—Know all men by these presents, that I, Drury Gardner, for the sum of ($100) cash in hand paid, have sold unto J. W. Wilson that certain tract of land known as abstract 852, survey 1382, located by certificate 5053, Atascosa County, Texas, of 320 acres. To have and to hold the same free from all claims of me or my heirs forever, the title to the same I forever agree to defend against all claimants whatsoever.

"Witness my hand, this the 6th day of August, A. D. 1866.

"DRURY GARDNER."

*"State of Texas, County of Bexar.*—Before me, the undersigned authority, personally appeared Drury Gardner, well known to me to be the person whose name is signed to the above instrument of writing, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Witness my hand and official seal, this 6th day of August, A. D. 1866. [L. S.]

"JULIUS HOYER,
"Not. Pub., Bexar Co., Texas."

After the indictment was filed in the District Court of Atascosa County, the district attorney and defendant by agreement changed the venue to the Twenty-eighth Judicial District, in Travis County.

In the District Court of Travis County defendant made affidavit for severance as to F. E. Grooms, indicted separately in another case for forging a land title, the venue of which had also been changed to Travis County, and averring that the two offenses grew out of the same transaction. This application for severance was controverted by the district attorney, and the same was, upon hearing, overruled and refused by the court.

At the trial it was proved that the defendant, Grooms, proposed to sell the land mentioned in the above and foregoing deed to one Paul Siler, who owned the adjoining lands, and, as evidence of his title to the same, he turned over to Siler the above deed from Gardner to J. W. Wilson, and also a deed from J. W. Wilson to him (defendant G. G. Grooms.) Siler was to have these deeds submitted to his attorney, who was to pass upon the validity of the title. Siler's attorney was N. R. Wallace, county judge of Atascosa County, who, in connection with his brother, J. P. Wallace, had compiled and owned abstract books of the

40th Crim. Reps.—21

titles to lands in the county. Upon an examination of the two deeds, from Gardner to Wilson and Wilson to Grooms, Judge Wallace found that they had never been recorded, and from his own knowledge of defendant's handwriting, and after consultation with other parties, came to the conclusion that he, defendant, had forged these deeds. Under these circumstances, in order to secure and get possession of exact copies of the deeds, Judge Wallace took them to San Antonio and there had the two deeds photographed. During Wallace's absence at San Antonio his office at Pleasanton was entered, and his abstract books of land titles of the county was abstracted from the office. Defendant in the meantime had applied to J. P. Wallace for his deeds, seeming to be uneasy about them, and J. P. Wallace assured him that he should have the deeds when his book of abstracts was found. Upon the return of County Judge Wallace from San Antonio, he and J. P. Wallace went into defendant's law-office and searched for the abstract, but did not find it there. Shortly thereafter, the abstract of titles was found in an alley in the town of Pleasanton, and Judge Wallace returned to defendant the two deeds he had received from Siler, to wit, the deed from Gardner to Wilson, and from Wilson to defendant. At the next term of court defendant was indicted for the forgery of the Gardner deed, and defendant's brother, Dr. F. E. Grooms, was indicted for the forgery of the deed from J. W. Wilson to defendant.

After the indictment was presented, and before the venue was changed to Travis County, the district attorney of Atascosa County had a notice duly served upon defendant to produce the original Gardner and Wilson deeds at the trial, or secondary evidence would be offered as to said deeds.

At the trial in the District Court of Travis County defendant was asked to produce these original deeds, and upon his failure and refusal to do so, the State was permitted and introduced the photographic copies which Judge Wallace had taken at San Antonio.

The State proved by several witnesses acquainted with defendant's handwriting that the deed from Gardner to Wilson was in his handwriting. Also introduced, as a standard of comparison, a petition for review written by defendant in a civil case filed by him in Atascosa County, and one or two other genuine specimens of defendant's handwriting. A number of expert witnesses, after comparison of the said standards with the photographic copies, testified that the handwriting in the Gardner deed, including the signature of Gardner and the notarial certificate of Julius Hoyer, was that of the defendant, and that he also wrote the body of the deed from Wilson to himself. Defendant introduced several experts who testified that the writings were not the handwriting of defendant.

The State also proved that neither Gardner nor Wilson were ever known to any of the officers or old citizens of Atascosa County. Defendant himself testified that he had never known or seen Wilson, but bought the land from him through correspondence with him; prepared the deed and sent it to Dr. F. E. Grooms, who attended to getting Wilson to ex-

ecute the same. Dr. F. E. Grooms testified that he knew Wilson, had seen him once or twice, and that Wilson had executed the deed which he and one Autrey signed as witnesses; that Wilson had resided in Lavaca County. Process sued out by defendant for Wilson to Lavaca and other counties was returned "not executed." Defendant produced the register of an hotel in Hallettsville, which showed that Wilson had twice registered at said hotel; but the proprietor of the hotel nor any of the parties connected with the hotel remembered him. These names on the register were found by defendant and called to the attention of the proprietor shortly before the trial, and the State showed that the names were both blurred and that they were of a suspicious character.

Defendant made a motion in arrest of judgment which attacked the legality of the change of venue to the District Court of Travis County.

*R. W. Hudson, S. B. McBride,* and *Walton & Hill,* for appellant.—
Unless the indictment for forgery of land titles in Atascosa County be presented by the grand jury of Travis County, the District Court of Travis County has no jurisdiction of the offense; and the agreement to change the venue from Atascosa to Travis County did not confer the jurisdiction upon the District Court of Travis County, nor can said agreement be considered at all in determining the jurisdiction. Penal Code, arts. 553, 555; Rogers v. Kennard, 54 Texas, 40; Sayles' Ann. Const., note 130, p. 541; Griffin v. Brown, 1 Ct. App. C. C., secs. 1009-1209; Haney v. Millikin, 2 Ct. App. C. C., sec. 223; Morton v. Gordon, Dall., 399; Constitution of Texas, art. 5, sec. 8.

The indictment is defective and insufficient to support a conviction, for the reasons set forth in the following statement, viz: It is alleged in the indictment that the forgery was committed in Atascosa County, but the alleged forged deed is set out in haec verba, showing on its face that it was executed in Bexar County, without alleging what was done by defendant in Atascosa County constituting the offense. Penal Code, art. 554; Henderson v. State, 14 Texas, 519.

The court erred in refusing the application of appellant for a severance between this and the case of F. E. Grooms, and in refusing to order that the said F. E. Grooms be first tried. King v. State, 35 Texas Crim. Rep., 472; Willey v. State, 22 Texas Crim. App., 408; Shaw v. State, 39 Texas Crim, Rep., 161; Willey v. State, 22 Texas Crim. App., 413; Rucker v. State, 7 Texas Crim. App., 549; Myers v. State, Id., 640; Allison v. State, 14 Texas Crim. App., 402.

The testimony of J. P. Wallace, as to the theft of the abstract books, was immaterial and irrevelant to the issues in the case, and would prove necessarily and eminently prejudicial to defendant, and therefore would prove irremediable.

This evidence was not only irrelevant and immaterial, but of the most hurtful character. It carried with it five propositions, four of which were stabs at the personal integrity of the defendant; the effect of the stabs lodging in the minds of jurors was not only unremovable but put

him at a disadvantage in their esteem, from which he could not recover: 1. That a set of abstract books had been stolen. 2. That defendant had stolen them and knew where they were. 3. That he could produce them. 4. That he did produce them. 5. That he produced them from fear that certain papers would be withheld from him.

The first proposition was true,—possible true,—but the other four were palpably false: but their falsity did not in the least lessen the injurious effect on defendant.

There was no reason, from any part of the evidence, to say that Grooms had guilty connection with the lost abstract books. It is not pretended that he had taken the abstract books; that he knew aught of them, or that he was in any way instrumental in the finding or restoring them to the possession of the alleged loser thereof: and yet, by the testimony of J. P. Wallace, admitted over defendant's objections, he was made, by unavoidable implication, to stand before the jury as a thief, and bargaining for the restoration of the stolen property.

It is inconceivable how a sane mind can deduce from the evidence guilt on the part of defendant in connection with the missing books; or, if that could be deduced, how that guilt could authorize the inference that he was guilty of forging the deed, for which alleged crime he was on trial.

The expert witnesses, Groos, Walsh, and Walling, on the subject of handwriting, by comparison, touching the identity of the handwriting in the body of the deed from Drury Gardner to J. W. Wilson, admitted, to questions put to them, severally, that. they did not know the handwriting of Drury Gardner, whose name purported to be signed to said deed, by himself in person. Nevertheless, they were permitted to testify, over the objections of defendant, using a photographic copy of said signature and comparing it with papers written by the defendant. In other words, these experts were permitted to give their opinion, by comparison, that the original of a photographic copy of a signature, the forgery of which was the subject of investigation, was written by. the person, who wrote the writing with which the said photograph was compared. On both reason and authority, we denounce this expert testimony as not only unreliable, but illegal and inadmissible from any standpoint, and that its admission was fatal wrong to the defendant on trial. If this exact point has ever been definitely made in a criminal case in Texas, and passed on by this court, the fact has escaped our attention. Laws. Exp. Opin. Ev., 323, Rule 57, subrule and remarks thereunder, 323-373; Rogers' Exp. Test., chap. 7, p. 176; Heacock v. State, 13 Texas Crim. App., 97; Jones v. State, 7 Texas Crim. App., 457; Hanley v. Gandy, 28 Texas, 211; Hernandes v. State, 18 Texas Crim. App., 134; Thomas v. State, 18 Texas Crim. App., 213; Rollins v. State, 21 Texas Crim. App., 148.

We respectfully call the attention of the court to two cases in 16 Southwestern Reporter,—Franklin v. Franklin, 557, and Powers v. McKenzie, 559,—believing that the reasoning of the court and the conclusions reached will throw much instructive light on the subject under discussion here.

As to the use of the photographic copy of the signature of Drury Gardner, alleged to have been forged, we simply in this connection refer to the case of Eborn v. Zimpelman, 47 Texas, 519, et seq.

The court erred in admitting as secondary evidence the photographic copies of the deeds over defendant's objections, because (a) the testimony of the photographer (Brack) was not sufficient to prove that the photographic copies were exact copies or facsimiles of the original papers; (b) nor that the requisite scientific means were used to procure exact photographic copies; nor that the instruments used were scientifically accurate; (c) nor that the photographer, or any other witness, had compared the photographs now offered with originals; (d) the evidence shows them not direct copy, but copies or prints from negative; (e) the law does not permit comparison of handwriting by use of photographic copies, but by and of original only; (f) no sufficient predicate.

The objections of defendant to this use of the photographs and the admission of this testimony, in connection with and concerning them, were, (1) that a photographic copy of an original document can in no case, under the law, be made the standard either of or for a comparison of handwriting. (2) Nor can it, under the law, be compared with a standard of comparison, no matter how well established or fixed. (3) It can at no time be used as a party to a comparison of handwriting, whether as a standard or in comparison with a standard; whether the standard be really another paper or whether the standard be in the eye or mind of the witness; whether witness be expert or testify from claimed knowledge of handwriting. (4) It is secondary evidence only of the original which is indicted, and the handwriting of which alone is in issue. (5) Irrelevant and immaterial. (6) The witnesses have not qualified themselves to testify on subject of comparing actual handwritings with photographic copies or copies made from sensitive plates. Code Crim. Proc., art. 754; Hanly v. Gandy, 28 Texas, 211; Tome v. Railway, 39 Md., 36; same case, 17 Am. Rep., 540; Whart. Ev., sec. 676; Duffin v. People, 107 Ill., 113; same case, 47 Am. Dec., 431; Thomas v. State, 18 Texas Crim. App., 213; Howard v. Russell, 75 Texas, 176.

Whether or not propounded photographic copies are exact, "is certainly a question of fact." Eborn v. Zimpelman, 47 Texas, 519. If "a question of fact," then, should it be decided by judge or by jury? Here it was decided by the judge.

In re Foster's Will, 34 Michigan, 24, the learned Justice Campbell, so long a professor of law in the University of that State, as the organ of its Supreme Court, with Thomas M. Cooley as chief justice, in holding photographic copies inadmissible for purposes of comparing handwriting, says: "The original and not the copy is what the jury must act upon, and no device can properly be allowed to supersede it." Houston v. Blythe, 60 Texas, 509; Foster's Will, 34 Mich., 31.

In this connection we desire to call attention to the method of establishing and adopting a standard of comparison of defendant's handwriting by the court.

The adjudged standard was a petition in a suit (Gamble v. Maloney). Many witnesses testified that it was in defendant's handwriting; none that it was not. It was declared proved by the judge and accepted as a standard. Later, after defendant had testified in chief and was on cross-examination by the State, the same petition was presented to him by State's attorney and he was asked if he admitted that that was his handwriting, to which he answered that it was his handwriting except certain signatures, file marks, etc.

This was in and during the part of the cross-examination objected to by defendant, because on matters not testified about by defendant in chief. Our proposition is that this did not amount to such judicial admission of the handwriting of the standard as authorized the court to judicially declare it such and permit its use as such over defendant's objection. 1 Greenl. on Ev., sec. 205, title, "Judicial Admissions."

We believe that to be an admitted standard the paper must have been voluntarily accepted and agreed on as such by the parties. In other words, it must be "the solemn admission of the party or his attorneys made for the purpose of being used as a substitute for the regular legal evidence of the fact at the trial." This question further emphasizes our argument against the State's compelling (under guise of cross-examination) defendant to testify against himself. See Foster's Will case, 34 Mich., supra (comparison of handwriting by use of paper extraneous to the case, as a standard not permissible). English decisions permitting such comparisons are based on statute. Vinton v. Peck, 14 Mich., 294.

While this court has heretofore held that where a defendant tenders himself as a witness in his own behalf he assumes the status, responsibility, and liability of any ordinary witness in the case, and subjects himself not only to a thorough cross-examination, but may be searched on new matter, even though such new matter be self-criminating. In other words, this court holds, in substance, that a defendant on trial, conditioned as above, can be compelled by the trial court, under the pains and penalties of contempt of court, to give new, independent,. affirmative testimony on which to convict himself. 29 Am. and Eng. Enc. of Law, note 4, p. 846.

In view of the protecting provisions of the Constitution of the State of Texas, article 1, section 10, "He (defendant) shall not be compelled to give evidence against himself," and article 5 of the Constitution of the United States, "nor shall he (defendant) be compelled, in any criminal case, to be witness against himself," the foregoing holding presents rather a startling proposition to the student of the Constitution, or a constitutional lawyer, and we think it would be wisdom .wisely invested, on the part of the court, to review its utterance on this subject with the greatest caution and fullest thoroughness.

State legislation may clothe a citizen with large and numerous rights not bestowed on him by the Constitution, but can take from him no single protection accorded to him by it.

The question has never been exhaustively discussed by this court, nor,

as we believe, received that attention which its gravity demands. Cool. Const. Lim., pp. 317, 380; People v. Annis, 13 Mich., 511, People v. Thomas, 9 Mich., 321; Com. v. Mullin, 97 Mass., 547; Com. v. Curtis, Id., 574; Com. v. Morgan, 107 Mass., 199.

[Note.—In addition to their brief, counsel for appellant filed a most able type-written argument, which the Reporter regrets can not be reproduced here, owing to its length.]

*Robt. A. John,* Assistant Attorney General, for the State. [No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at confinement in the penitentiary for a term of six years, and he appeals.

Appellant made a motion in arrest of judgment, on the ground "that said indictment is not sufficient to support the conviction, in that it is alleged therein that the forgery charged was committed in Atascosa County, Texas, but sets out and quotes the alleged forged deed, which purports on its face to be executed in Bexar County; and does not allege any act other than said allegation of forgery constituting the offense to have been committed in Atascosa County." There is nothing in this contention. Article 553 of the Penal Code authorizes the offense of forgery of land titles to be prosecuted in the county where the forgery was committed, or in the county where the land is situated about which the offense of forgery was committed. It is shown that the land in question is situated in Atascosa County.

Appellant also assigns as error the fact that the venue was changed by agreement to Travis County. Article 553, supra, authorizes prosecutions for forgery of land titles to be prosecuted also in Travis County; that is, Travis County, as well as the county where the land is situated, has original jurisdiction. But the complaint here is that, while the prosecution could have originated in Travis County, yet there was no authority to transfer the venue by agreement from Atascosa to Travis County; it being insisted in this connection that consent will not confer jurisdiction. Inasmuch as Travis County has original jurisdiction, it occurs to us that it was competent to transfer the jurisdiction from Atascosa to Travis County. If Travis County, under no circumstances, could entertain jurisdiction of the offense, then consent would not give jurisdiction. But the venue was properly changed to Travis County on another ground. The venue was changed from Atascosa County on some account. While the attorneys agreed to the change on account of the existing prejudice, of course the court itself must have moved in the matter; and it was authorized under article 613, Code of Criminal Procedure, to change the venue on its own motion. But this article authorizes the change to be made to any county in his own or an adjacent district. Travis County is not in the district adjoining the district in which Atascosa County is

situated. But article 619, however, authorizes that if it be shown in the application for a change of venue, or otherwise, that all the counties adjoining that in which the prosecution is pending are subject to some valid objection, the cause may be removed to such county as the court may think proper. In support of the change of venue, it will be presumed that the court acted properly in making the change to Travis County, and that the court was informed by some means that the same reasons existed in the adjoining counties that existed in Atascosa County for the change of venue; and in such case it was authorized to change the venue to any other county, as it might think proper.

Appellant made a motion for a severance as between himself and F. E. Grooms. The motion shows that they were indicted in separate indictments, and alleges in general terms that they were indicted for one and the same transaction. This was denied by the State, which filed a controverting affidavit on the subject. The proof showed very clearly that they were separate and distinct transactions. If the plea itself had gone into details, it would have shown a distinct transaction from that charged against appellant; that is, the indictment against F. E. Grooms set up the forgery of a different deed. True, it was with regard to the same land, and was a link in the title; but it was none the less a separate and distinct forgery, and no part of the forgery for which appellant was indicted. Appellant complains that it was improper for the court to authorize any inquiry or investigation in order to determine whether or not it was a different transaction; and that when he made his application, and recited the fact, the hands of the court were tied, and it was compelled to concede the full truth of the general affidavit, and grant the severance. We do not believe this contention is correct, and it was entirely competent for the State, in reply, to show the fact that they were different transactions; otherwise, in any case the State would be liable to be imposed on by general affidavits claiming a severance. The cases cited by appellant of King v. State, 35 Texas Criminal Reports, 472 and Shaw v. State, 39 Texas Criminal Reports, 161, are not in point. No question was made in said cases that the indictments were for distinct transactions. We hold that it is entirely competent for the State, in reply to a motion to sever, to set up and establish the real facts; and if these show that they are different and distinct transactions, it is proper to overrule the motion to sever.

On the trial the State offered in evidence a photographic copy of the deed from Drury Gardner to J. W. Wilson, bearing date August 6, 1866. This was a copy of the alleged forged instrument. The State also offered in that connection the certificate of acknowledgment to said deed, and also a photographic copy of the deed from J. W. Wilson to G. G. Grooms of the same land, bearing date October 3, 1896, and the certificate of acknowledgment thereto, bearing date the 3d of October, 1896. The certificates and last mentioned deed were offered in evidence as bearing on the intent, etc., of the defendant. In connection with the introduction of said deeds and said photographic copies, and as a predicate therefor,

the State introduced in evidence notice to the defendant and his attorneys to produce said deeds, which were charged to be in their possession, so that they might be used as evidence. And the State also offered the testimony of the photographer who took the said photographic copies, tending to show their correctness. Appellant objected to this evidence, because photographic copies could not be used in evidence; for a sufficient predicate had not been laid for the introduction of said copies, by showing that they were accurate copies. In our opinion, the notice served on appellant and his attorneys to produce said deeds was sufficient; and, besides, the record shows that he had said deeds in his possession, and that he did not intend to produce them. As to the conditions under which said photographic copies were taken, and their accuracy in comparison with the originals, the State introduced the photographer; and his testimony, we think, furnished a sufficient predicate to authorize their introduction as accurate copies of the originals. True, the authorities teach that, before secondary evidence of this character can be resorted to, it must be shown that the copies offered are accurate copies. Eborn v. Zimpelman, 47 Texas, 503; Houston v. Blythe, 60 Texas, 506; Buzard v. McAnulty, 77 Texas, 438; 2 Jones on Ev., sec. 597. It is not necessary here to reiterate the testimony of the photographer on this matter. It is copied in full in the record, and is quite lengthy. He testified that the photographs were exact as to words and letters, but there may have been a little difference in color; could not swear positively; that the angles and strokes of the letters were accurate; that there might have been a slight difference in length accross the copy; that the forms of the letters were accurate; that, after he made the copies from the plate, he did not compare them with the original, but, from the process and conditions surrounding the taking, he knew them to be accurate; that he made the measurements with his eye; that, from his knowledge of photography, the copies taken were bound to be true copies. We do not believe it can be seriously contended at this day that photographic copies of original writings where the writings are shown to be in the possession of the adverse party, and are not produced on notice, can not be used in evidence. The authorities all teach the contrary. Rice, Crim. Ev., secs. 101-103; 2 Rice, Civ. Ev., chap. 52, p. 1163, et seq.; Endl. Crim. Ev., p. 62. And the same authority has been repeatedly recognized by our own courts. Howard v. Russell, 75 Texas 171; Thomas v. State, 18 Texas Crim. App., 213; Eborn v. Zimpelman, 47 Texas, 503. Mr. Rice, quoting from Udderzook's Case, 76 Pennsylvania State, 340, uses this language: "It is evident that the competency of the evidence in such case depends on the reliability of the photograph as a work of art, and this must depend upon the judicial cognizance we may take of photographs as an established means of producing a correct likeness. The daguerrean process was first given to the world in 1839. It was soon followed by photography. It has become a customary and a common mode of taking and preserving views, as well as the likenesses of persons, and has obtained universal assent to the correctness of its delineations. We know that its principles

are derived from science, that the images on the plate, made by the rays of light through the camera, are dependant on the same general laws which produce the images of outward forms upon the retinæ through the lenses of the eyes. The process has become one in general use, so common that we can not refuse to take judicial cognizance of it as a proper means of producing correct likenesses." Rice, Crim. Ev., sec. 101. As to writings, there seems to be some difference as to the use of photographic copies as standards of comparison; but we do not understand this to apply to the instrument itself, the genuineness of which is in issue. See 2 Jones on Ev., p. 569; Endl. Crim. Ev., p. 62. In this case, the State used proper efforts to procure the originals. They were in appellant's possession, and if the photographic copies introduced were not correct it would have been a very easy matter on appellant's part to have produced the originals. He could not be forced to produce them, but the fact that he had said originals, and, when called on, refused to produce them, authorized the use of the photographic copies, and every intendment will be indulged in favor of their correctness; and, under the proof in this case, no doubt was left as to their being facsimiles of the originals in possession of appellant.

In our opinion, the standards of comparison, including the Gamble against Maloney bill of review, were clearly shown to be in the handwriting of appellant, and were such evidence, in our judgment, as were proper standards for comparison. The most, if not all, of these standards, were confessedly in the handwriting of appellant. Furthermore, the insistence of appellant that Gross, Walsh, and Walling did not qualify as experts in regard to the handwriting of appellant is equally without foundation. As to the latter, he not only qualified as an expert in handwriting, but was familiar with the handwriting of appellant, and saw the original deeds, and not only spoke from the photographic copies, but from the original deeds themselves.

It appears that the State was unable to make out its case by showing affirmatively that the deed appellant was charged to have forged was not in the handwriting of Drury Gardner. No witness knew him, and evidently the State was not able to procure any testimony as to his handwriting, and could only attack the genuineness of his signature by a negative pregnant; that is, by showing that the Drury Gardner deed was in the handwriting of appellant. Walling, Reed, and the Wallaces, and perhaps some other witnesses, were perfectly familiar with appellant's handwriting. They had seen the original deed alleged to have been forged. These and other witnesses qualified as experts, and, with the photographic copy before them, by comparison with standards which had been proven up, they testified that the Gardner deed was in the handwriting of appellant. The fact that some of the witnesses may have been shaken as experts in the cross-examination does not go to the admissibility of their testimony, but rather to its strength. We hold that it was entirely competent to prove, as was done, that Drury Gardner did not execute said deed, by proving that same was executed by appellant.

In addition to the direct proof of experts on this question, the State introduced abundant testimony, of a circumstantial character, tending strongly to show that appellant wrote and executed said deed. The peculiar circumstances attending the purchase,—the fact that the man Wilson did not go to the county seat of Atascosa to close the transaction, but stopped some twelve miles short of said point; that appellant did not go to meet him, but sent his brother; that same was not executed in the presence of any officer, but that the brother of appellant subsequently went before the officer and proved up the deed for record; the further fact of the great disparity in price paid and the actual value of the land, and the mystery attending the negotiation of purchase; that appellant never saw the vendor, though he might have seen him, if he in fact existed; and the further fact that the brother of appellant, who completed the negotiation at the time it was executed, according to his testimony, failed to secure the most 'important paper from this stranger, Wilson, to wit, the Gardner deed; and that this man Wilson does not appear to have been known in that section, nor seen by any one except the brother of appellant, F. E. Grooms, and one or two of his witnesses, and not identified by them; and also appellant's anxiety to recover the deeds, after he had parted with them to Siler for inspection by his attorneys,—these, and other circumstances, tend very strongly to support the theory of the State, as predicated on the expert testimony; and we believe the jury were abundantly warranted in finding that the Gardner deed was executed by appellant, though there was no direct proof as to said deed not being in the handwriting of Drury Gardner.

Appellant complains that the State, on cross-examination, brought out from the defendant new matter, about which he was not interrogated in chief, to wit, with reference to the writing by him of the original bill of review in the case of Gamble against Maloney, an original paper of the District Court of Atascosa County, and which was ruled by the court to be a standard for the comparison of the defendant's handwriting in this case, and which had been used by the State as a standard of comparison. The objection urged by appellant to this testimony is that it was violative of appellant's constitutional right, in compelling him to give evidence against himself; that the testimony in question was not germane to any portion of appellant's examination in chief. The rule which seems to be followed by this court on this subject is to the effect that, when a defendant is placed on the stand on his own behalf, he is held to waive his constitutional right, and can then be cross-examined upon any branch of the case, although he may not have been examined upon such branch of the case in chief. The authorities in other States appear to be divided upon this question. But, aside from this, it occurs to us that the testimony with reference to the handwriting of appellant was germane to his examination in chief. He testified, in his direct examination, that the Gardner deed was not in his handwriting; that he had every reason to believe that it was in Gardner's handwriting; and he claimed to have had an old letter that came to him with the deed in Gardner's handwrit-

ing. Now, it occurs to us that, the bill of review above referred to being already in evidence as a standard of comparison, and proved to have been written by him (appellant), he could be cross-examined with reference to said paper as a standard with which to compare the deed in question. The bill of review was a court paper, and, according to the evidence, had been filed by appellant in said case of Gamble against Maloney; and, as a standard of comparison already in evidence, it was competent, on cross-examination of defendant, to ask him with reference to his genuine writing in said bill of review, in connection with the signature to the Gardner and Wilson deeds.

The State placed J. P. Wallace on the stand, and asked him in regard to the loss of certain abstract of title books of the title to lands in Atascosa County, to which the defendant objected, "because the same is immaterial and irrelevant to the issues in the case, and would prove, necessarily and inevitably, prejudicial to defendant, and therefore would be irremediable." In reply to this, we might say that the bill is not full enough to authorize us to state that any error was committed in the admission of evidence in regard to the loss of said abstract books. If we were permitted to look back to the statement of facts in order to judge of the admissibility of this testimony, we are inclined to think that the court committed no error in allowing its introduction. These abstract books were the property of Wallace and brother, and were very valuable. The Wallaces at the time had the alleged forged deeds in their possession, the same having been given to them by Siler, who procured them from appellant. Appellant desired to sell the land to Siler, and the deeds had been given to Wallace for examination by Siler. It appears that the Wallaces withheld the deeds, and, appellant having learned that something was wrong, became very uneasy in regard to them, and desired to regain possession of said deeds. About this time, the certain abstract books referred to mysteriously disappeared from the office of Wallace and brother. They suspected defendant with having taken them, and immediately proposed to him, if he would return or see that said books were restored to them, that the deeds would be delivered to him. The testimony strongly suggests an agreement between appellant and the Wallaces to that effect. The abstract books appear to have found their way into the possession of the Wallaces, and appellant did not immediately receive the deeds. He was still anxious in regard to them, and Wallace informed him that, as soon as his brother returned from San Antonio, the deeds would be restored to him in accordance with their understanding. We think this agreement has a direct bearing on the question of forgery. If appellant forged said deeds, he would be very anxious to regain possession of the originals; and this is further manifested by the fact that, when he regained possession of them, he has since failed to produce them. They have not even been recorded. This transaction, in connection with the abstract books, directly involves the suppression of the alleged forged deeds, and we think it was admissible testimony. But, however that may

be, the court in its charge excluded this testimony for any purpose whatever.

We think it was entirely competent for the State to show by witnesses that defendant admitted that he had possession of said original deeds, and his remarks in that connection to the effect "that he would not be damn fool enough to give them up." Nor do we see any impropriety in the district attorney remarking, when such testimony was objected to, that his purpose was to put the original deeds in evidence. It appears that every legal effort was used by the district attorney to accomplish this purpose, and the fact that he may have stated, when the objection was urged by appellant to the testimony regarding said deeds, what his object was, we can not consider illegal or improper. We have examined the record carefully, and fail to find any reversible error therein; and, in our opinion, the evidence fully authorized the jury to convict appellant of the offense of forgery; indeed, they would have been recreant to their duty had they failed to return a verdict of guilty against him. The judgment is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.

[NOTE.—Appellant's motion for rehearing was overruled May 29, 1899, without a written opinion.—Reporter.]