**Darlene Yevone WALLACE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42858.**

Court of Criminal Appeals of Texas.

May 6, 1970.

Rehearing Denied July 15, 1970.

Second Rehearing Denied Oct. 14, 1970.

Gerald K. Fugit, Odessa, Stayton, Maloney, Black, Hearne & Babb, by Frank Maloney, Austin (on motion for rehearing only), for appellant.

Royal Hart, Dist. Atty., San Angelo, John Harrod, County Atty., Eden, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is an appeal from a conviction for robbery by assault with the punishment assessed at 15 years.

The record reflects that while on a trip from Texarkana to Sheffield on March 1, 1968, the complaining witness, Lawrence Cadenhead, was flagged down a few miles east of Ballinger by the 21 year old appellant, who stated she and "her husband" had a flat tire on their automobile parked near a roadside park and requested a ride into Ballinger. Once in Ballinger the couple requested they be carried to San Angelo where they had relatives. Cadenhead agreed. After a number of miles on the San Angelo-Paint Rock highway Cadenhead was struck by appellant's companion, Hobart Barrington, and a watch and two rings were taken from him. At the point of a screw driver he was forced to drive to a remote area where he was taken from his pickup truck, had his clothes stripped from him and was tied to a tree. While in such condition the appellant struck the complainant in the head with a 12 inch wrench. She asked him if he had heard of "Bonnie and Clyde" and when Cadenhead replied "Yes, and lots of others" she responded, "We are them and a lot meaner." During this interim the appellant or her companion took from Cadenhead's billfold two gasoline credit cards and some cash. Eventually, Cadenhead was released from the tree and permitted to put on his tattered clothes. After getting gas in Paint Rock the couple drove to a deserted ranch house where Cadenhead was again forced to disrobe, was tied hand and foot, struck again in the head with a wrench, choked and left for dead. The couple departed in Cadenhead's pickup truck. After a night of 36° temperature a rancher, looking for sheep, observed new looking shoes in front of the deserted house, heard hollering inside and discovered Cadenhead in the condition in which he had been left.

Cadenhead made a positive in-court identification of the appellant as the woman who had assaulted him.

The appellant called one witness who testified that the appellant was with him in San Antonio at the time of the alleged offense. The jury by their verdict [1] rejected the defense of alibi.

In her first ground of error appellant urges the trial court erred in failing to grant her motion for change of venue. In such motion she alleged that there existed in Concho County so great a prejudice against her that she could not obtain a fair and impartial trial. See Article 31.03, Vernon's Ann.C.C.P.

At the hearing on the motion to change venue the appellant did not call either one of the two compurgators. Instead, she called the District Attorney and her great aunt, both residents of Tom Green County. By these witnesses it was merely established that there was a newspaper, a television station and several radio stations in San Angelo in Tom Green County adjoining the county of the prosecution. The extent of the coverage in Concho County of the news media was not shown. The appellant also offered into evidence approximately 19 newspaper stories that had appeared in the San Angelo *Standard Times* and one that had appeared in the *Eden Echo* concerning the alleged offense during a period of approximately three months. These news accounts appeared to have been published merely to inform the public of current events. They certainly were not inflammatory in nature.

The State relied upon the testimony of the Sheriff that appellant could receive a fair and impartial trial in Concho County.

1. This witness, a married man, testified that the appellant, with whom he had been intimate on a number of occasions, came to his motel room in San Antonio February 29, 1968, where he had registered with a woman named Carolyn whom he had picked up in San Antonio. He related that on March 1 Carolyn left due in part to her dislike of three in a bed even though he slept on the outside and not in the middle.

We cannot agree that the court abused its discretion in denying the motion for change of venue.

In 16 Tex.Jur.2d, Criminal Law, Sec. 246, p. 398, it is written:

"The mere fact that a matter has been presented by the press and discussed by the public does not conclusively establish prejudgment of the cause. And an inference of prejudice, requiring a change of venue, is not to be drawn from the fact alone that newspapers published in the vicinity have contained articles descriptive of the offense, or editorials denunciatory of the accused, provided the accounts are fair, not inflammatory, and apparently published for the purpose of informing the public of current events. It is not enough for one seeking a change of venue to show the publication of newspaper articles in respect of the case; he must go further and show that by reason thereof there has been created in the public mind so great a prejudice as will prevent him from receiving a fair trial.

"At times, the courts do encounter situations in which printed publicity has been an important factor in creating such prejudice as would render it improbable that, pursuing the methods provided by law, an impartial trial could be had. And evidence of such publications and their circulation is relevant on the issue of prejudice."

Although the appellant introduced newspaper clippings, she did not go further and show that by reason thereof there had been created in the public mind so great a prejudice as would prevent her from receiving a fair trial.

The motion for change of venue was renewed after the voir dire examination of the jury panel and was again denied. We have carefully examined the jury voir dire and have concluded the trial court correctly ruled.

Next, appellant advances the contention that "[t]he court erred in not permitting the defendant to have a full discovery."

The appellant was accorded a pre-trial hearing on her motion or motions for discovery under Article 39.14, V.A.C.C.P. The careful trial judge went over each item requested and granted most of what the appellant asked.

On the morning the trial commenced a deputy sheriff called the Sheriff's and District Attorney's attention to a box of items collected as evidence in the case which had been stored in the Sheriff's office. The court and the appellant's counsel were notified and counsel was given a few minutes to examine the items which the prosecutor stated he would not introduce. Later, an examination of the items in the box was held in the presence of the court in the jury's absence. At the court's suggestion some clothing (apparently of the complaining witness) which bore stains resembling blood were sent to the Department of Public Safety for analysis. The appellant refused the court's offer to take a portion of the clothing for use in a similar analysis. Later it was shown by a chemist's testimony that the stains were in fact blood, but the stains were too old to determine if it was human or animal blood.

Appellant's chief complaint appears to be that the State suppressed evidence by failing to produce the box of items at the time of the pre-trial hearing rather than upon the discovery of the box on the morning of the trial. There is nothing, however, to show that the Sheriff or District Attorney acted except in good faith.

The items having been called to appellant's attention prior to trial, appellant cannot now claim suppression of evidence of which she was aware prior to the jury's retirement. See Means v. State, Tex.Cr. App., 429 S.W.2d 490, 496. Further, she has failed to point out how any of this evidence was favorable to her on either the issue of guilt or punishment. Her reliance

upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is misplaced.

Ground of error #2 is overruled.

■ Next, appellant contends the "court erred in permitting the testimony of Witness Jack Jones."

Jones, a deputy sheriff from Tom Green County, testified that known fingerprints of the appellant matched a partial print lifted from an abandoned Mercury automobile found at a roadside park several miles east of Ballinger. Appellant does not challenge Jones' qualifications as a fingerprint expert but complains that (1) the photographs of the fingerprints were not full blown photographs and (2) the points of comparison were seven or eight rather than twelve which would have been preferable for a partial print. Further, she complains that she was unable on cross-examination to make the witness Jones clearly delineate the seven or eight points of comparison he testified he found. The record reveals that appellant's counsel possessed considerable knowledge of identification by the use of fingerprints. The fact, however, that an expert witness' testimony has been shaken on cross-examination goes to its weight, not to its admissibility. Grooms v. State, 40 Tex.Cr.R. 319, 50 S.W. 370.

There does not appear to be any hard and fast rule as to the minimum number of identical characteristics or points of comparison for a positive identification. Moses, Scientific Proof in Criminal Cases, Sec. 706, VII—9. While some law enforcement agencies require more, the Houston Police Department requires only seven, Moses, supra, and the witness Jones related the F. B. I. required only seven.

And we are not impressed with the claim that a full blown photograph of the fingerprints should have been made since facilities for doing so were available to the State.

Ground of error #3 is overruled.

■ Lastly, appellant complains "[t]he District Attorney commited reversible error by his actions in the court room."

Upon being recalled, the complaining witness testified that he was shown a number of photographs by a Texas Ranger and the Sheriff several days after the alleged offense. The appellant objected when the prosecutor attempted to show the photographs to the witness and a conference at the bench ensued. The court sustained an objection to one photograph and the State inquired that if the background (apparently showing the photograph was made of appellant while under arrest) of the photograph was obliterated, would this affect the court's ruling. The court replied it would examine the photograph after the background portion had been removed.

Thereafter the appellant objected to the action of the District Attorney in cutting on the picture or photograph within "20 feet of that jury" while "every eye on the jury" watched.

At this point the court excluded all photographs but overruled the motion for a mistrial. The photographs are not in the record before us and there is no showing that any juror saw the photograph or observed more than the District Attorney cutting on a piece of paper with scissors.

The appellant cites no authority for his position and we are not impressed with the merit thereof.

The judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

New counsel has entered this case since our original opinion was prepared. For

the first time, it is now urged that the trial court should have conducted a hearing prior to trial on the question of appellant's competency to assist her counsel in her defense. Reliance is had upon the opinions in Townsend v. State, Tex.Cr.App., 427 S.W.2d 55; Morales v. State, Tex.Cr.App., 427 S.W.2d 51, and Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.

This is how the matter arose. At a pre-trial hearing, appellant's counsel dictated to the court reporter a request for a pre-trial hearing on appellant's competency. The court said he would consider holding a hearing on the issue of competency during the trial on the merits, or prior to the trial on the merits, before the jury which was to try the case. The state consented to a separate hearing prior to the main case, before the jury which was to try the case. At this juncture, the state announced to the court that appellant's counsel had, after indictment, illegally secured admission of appellant into the Big Spring State Hospital where those in authority had found her sane.

The court then stated that, in light of these facts, he saw no benefit to be gained by appointing someone to examine her. The question of sanity or competency was never raised during the trial on the guilt issue. In the court's charge, sanity was not mentioned, and no objection was raised.

At the hearing on punishment, appellant called a clinical psychologist who testified that he had examined appellant and concluded that she needed hospitalization and treatment for her emotional troubles. He also stated that she was not psychotic or schizophrenic at that time, but that when she got excited she became schizophrenic and unable to distinguish between reality and fantasy.

In rebuttal, the state called Dr. Kreimeyer who stated that appellant entered the Big Spring State Hospital on a voluntary commitment in July and on September 10th of the same year she was discharged. He expressed his opinion, as a psychiatrist who had interviewed appellant, that she knew the nature and consequences of her act and the difference between right and wrong. He stated that she probably could not benefit from further treatment. Two lay witnesses, who had observed her in jail, stated that they had observed no indications of insanity. Again, there was no mention of sanity in the charge and no objection was made.

While the jury was out of court considering punishment, this colloquy occurred between the court and appellant's counsel:

"COURT: Mr. Fugit, when we had a pre-trial on October 1st you read to the Court the copy of a motion which you had made which would request a trial in advance of the main trial on the issue of present insanity. The motion hadn't been filed up to that time and wasn't filed then but was received and filed by the Clerk on October 3rd. Now, the request wasn't at any time thereafter made to the court for a hearing on that issue in advance of this trial, and, in fact, you told me that you did not want to hear it in advance and did not expect to raise the issue in the trial of the case. Is that correct?

"MR. FUGIT: That is correct, Your Honor.

"COURT: All right, thank you. That's it."

No effort has been made prior to sentencing or during the course of this appeal to pursue the relief available to appellant under Sec. 4 of Article 46.02, V.A.C.C. P., which provides for a hearing on competency after guilt has been determined.

▆▆ We cannot therefore conclude that the question of competency or sanity was raised.

Appellant's new counsel raised the question of proof of venue and asserts that an issue was made in the trial by a motion for dismissal at the conclusion of the state's evidence. As is set out in the original opinion, the robbery was a continuing thing which lasted for hours. The owner of the vacant house in which he found Mr. Cadenhead testified that the house was in Concho County. In addition, the sheriff of Concho County testified that both the house and the gas station where the abductors and their hostage stopped for gas were located in Concho County. This testimony was sufficient to show that the continuing offense was being committed in Concho County, and that venue was proper in that county, Mann v. State, 148 Tex.Cr.App. 403, 187 S.W.2d 665.

Appellant next takes issue with our holding on the question of the failure to change venue. She asserts that we are faced with the same problem which we had in Mason v. State, Tex.Cr.App., 375 S.W.2d 916, which was reversed by the Fifth Circuit Court of Appeals in Pamplin v. Mason, 364 F.2d 1. We do not agree. In Pamplin, a hearing on the motion for change of venue was denied. In the instant case, there was full hearing on the issue. Further, Pamplin involved the first racial demonstration in the community and had serious racial overtones not present in this case.

In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, cited by appellant, the pre-trial publicity reached much greater proportions than did that in the case at bar. In Irwin, the prosecutor and police officials issued press releases, which were intensively publicized, stating that the defendant had confessed to six murders.

Appellant also cites Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. The publicity in that case, both before and during the trial, was extremely inflammatory and prejudicial, and the facts were vastly different from the facts under consideration here.

Appellant's motion for rehearing is overruled.