Richard Dean BRIDGES, Appellant,

v.

The STATE of Texas, Appellee.

No. 43881.

Court of Criminal Appeals of Texas.

May 26, 1971.

Rehearing Denied Sept. 23, 1971.

Second Rehearing Denied Nov. 9, 1971.

Stokes, Carnahan & Fields by Robert Carnahan, Amarillo, for appellant.

Tom Curtis, Dist. Atty., and Kerry Knorpp, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is unlawful sale of L. S. D.; the punishment eight (8) years.

The first question presented is the appellant's motion for a change of venue. The State relies upon Philpot v. State, 169 Tex.Cr.R. 91, 332 S.W.2d 233. Appellant relies upon even earlier authorities. We have concluded that the current test is set forth in Enriquez v. State, Tex.Cr.App., 429 S.W.2d 141. There we said:

"The question of change of venue has become a question of constitutional dimension under the recent decisions of the Supreme Court of the United States in Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663; Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543; and under the decision of our 5th Circuit Court of Appeals in Pamplin et al. v. Mason, 364 F.2d 1."

In Pamplin the Court said:

"Justice Clark noted that Estes, like Rideau and Turner [Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424], marks a departure from Stroble v. State of California, 1952, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 and Irvin v. Dowd [366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751], in both of which the Court had made a careful examination of the facts to determine whether actual jury prejudice resulted. In Estes, as in Rideau and Turner, the Court found the probability of prejudice inherent in the obnoxious practice: 'the circumstances were held to be inherently suspect.' 381 U.S. at 544, 85 S.Ct. at 1633, 14 L.Ed.2d at 551. This term in Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, the Court reversed still another conviction because of 'inherently prejudicial, publicity which saturated the community * * * and disruptive influences in the courtroom.'

384 U.S. at 363, 86 S.Ct. at 1522, 16 L.Ed.2d at 621.

"In this case, therefore, we apply the Irvin holding with the gloss of Rideau, Estes, and Sheppard. The test is no longer whether prejudice found its way into the jury box at the trial, as the Texas court stated in the petitioner's appeal. Mason v. State, Tex.Crim.App. 1964, 375 S.W.2d 916. As we read the Supreme Court cases, the test is: Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial. As the Supreme Court stated in Sheppard v. Maxwell:

" 'Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. * * * [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. * * * If publicity during the proceeding threatens the fairness of the trial, a new trial should be ordered.' 384 U.S. at 362, 86 S.Ct. at 1522, 16 L.Ed.2d at 620."

Unlike Enriquez v. State, supra, we do have before us certain newspaper clippings. They depict in some detail the activities of Mrs. Carolyn Carrlson Cox, a twenty-two year old housewife, an officer of the City of Amarillo, who posed as a high school student in order to ferret out narcotics violations occurring in the high schools and elsewhere. As she was an attractive woman and because of the uniqueness of her activities, she naturally drew a

favorable press. The appellant was mentioned and pictured in some of the articles.

Appellant called as witnesses several people in the news media, who related the extent of the news coverage of the appellant and the activities of Mrs. Cox, as well as the overall picture of the cases she made while acting under cover. This, standing alone, would not authorize a reversal on the grounds that prejudice against this particular appellant was shown in the community. We do not have before us, as we did in Enriquez v. State, supra, a transcription of the examination of the venire. We have no way of knowing how difficult it was to secure a jury. The court stated that he would hold the question of change of venue in abeyance during the selection of the jury and stated that he would change it on his own motion if it became obvious that a fair trial could not be had. We have concluded that the appellant failed to show reversible error in the action of the court in overruling his motion for a change of venue at the time the selection of the jury began.

Appellant's next ground of error is that the court failed to charge on the law of entrapment. We find no objection to the charge on this ground. Appellant moved for an instructed verdict on the ground that entrapment had been shown as a matter of law. The appellant did not testify.

■ In Henderson v. United States, 5 Cir., 261 F.2d 909, upon which the appellant relies, the case was reversed on the appellant's testimony alone, showing she had been induced to commit the offense with no profit to herself. Since the appellant did not testify, Henderson can have no application. Mrs. Cox testified to a conversation which took place between herself, the appellant, his friend Barfield, and agent Caraway of the Bureau of Narcotics and Dangerous Drugs. This meeting had been arranged by Mrs. Cox. During the course of the meeting, the appellant stated that he controlled the drug flow in Amarillo and had Barfield along for protection.

Following the agreement as to price, the appellant agreed to deliver 250 tablets of L. S. D. to Caraway. He left the motel where the meeting had been arranged and returned with 238 capsules; these capsules were submitted to a chemist, who found them to be L. S. D. The facts are similar to those shown in McKenzie v. State, Tex.Cr.App., 383 S.W.2d 177. We conclude that the defense of entrapment has not been shown. This ground of error is overruled.

Appellant's next ground of error is that the court erred in failing to grant a motion for instructed verdict because the testimony of the State chemist, Charles B. Teer, was not probative evidence that the substance purchased from the appellant was Lysergic Acid Diethylamide. The main thrust of appellant's argument is that the chemist based his conclusion that the substance he got from appellant was L. S. D. on comparisons with reference sample of L. S. D. In other words, Teer ran three chemical tests on the substance obtained from appellant. He compared the results of these tests with the results obtained when the same tests were run on the reference sample of L. S. D. From this procedure, he determined that the substance obtained from appellant was L. S. D.

■ Appellant made no objection to Teer's qualifications as an expert. He simply contends that the record shows that Teer did not know that the reference sample was actually L. S. D. The record affirmatively shows that Teer had formed an expert opinion that the reference sample was L. S. D. on the basis of the tests run on the reference sample. Teer testified as follows:

"This reference L. S. D., the spectra has also been run on the reference L. S. D., and compared with the different sources in the literature."

In light of the fact that Teer was properly qualified as an expert in the field of chemical analysis of dangerous drugs, this testimony is sufficient to show that his evi-

dence had probative force. Appellant's ground of error is overruled.

■ Appellant contends that the trial court erred in overruling his motion for new trial. Before trial, the court partially granted appellant's motion for discovery, ordering the State to produce the names of certain witnesses. The State failed to produce these names. Appellant made no objection or motion in regard to this matter at any time during the trial, but waited until his motion for new trial to raise the issue. When the State rested, appellant also rested, and made no complaint in regard to the missing names. Finally, appellant has failed to show that he was in any manner harmed by the State's failure to produce these names. This contention is overruled.

Finding no reversible error, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

■ On rehearing appellant contends this court correctly recognized the "Estes-Sheppard-Rideau" test for prejudicial pretrial publicity (whether there is a reasonable likelihood that such pretrial publicity would prevent a fair trial) but applied the older and now obsolete test (whether prejudice found its way into the jury box). He asks a re-examination of the evidence offered in support of his motion for change of venue "to see if it indicates a 'reasonable likelihood' that pre-trial publicity prejudiced" his right to a fair trial.

This we have done.

There was a sharp conflict in the testimony offered at the hearing on appellant's motion to change venue as to whether the pretrial publicity was likely to prejudice the right to a fair trial.

■ Some of the news media personnel called by the appellant did not believe such publicity would prevent the appellant from receiving a fair trial, although the lawyer-witnesses disagreed, including those who represented other defendants charged with narcotic violations who were not seeking a venue change themselves. The State's witnesses testified contrary to appellant's contention.

Many of the news clippings appear to be dated January 17, 1970, immediately following appellant's arrest. Not all of the stories concerned the appellant and those that did mention or refer to him were not exclusively devoted to his arrest and activities. The circulation figures of the newspaper or newspapers involved are not found in the record. While some of the references to the appellant in the news accounts attached are not flattering and certainly not desirable from the defense standpoint, the news accounts appear to be non-inflammatory and apparently published for the purpose of informing the public of current events. See Wallace v. State, Tex.Cr.App., 458 S.W.2d 67.

■ And it is well established that newspaper publicity alone does not establish prejudice or require the change of venue. Wallace v. State, supra. There was testimony about television coverage concerning some of the undercover agent's activities and appellant's arrest, etc., but here again we find no figures as to the possible viewing audience at the time or the area covered by the television station or stations.

The indictment returned on January 22, 1970, alleged the offense charged was committed on December 23, 1969. The trial commenced on March 4, 1970.

We remain convinced, after a re-examination of all of the evidence, that the court did not err in denying the motion to change venue and in effect finding there was no reasonable likelihood that the pretrial publicity would prevent a fair trial.

Appellant's motion for rehearing is overruled.