**Thomas Anthony ZULE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–526–CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 6, 1990.

Rehearing Overruled Jan. 10, 1991.

Bill May, Corpus Christi, for appellant.

Grant Jones, James D. Rosenkild, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and KEYS, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of aggravated sexual assault and assessed his punishment at life in prison and a fine of $10,000. The indictment alleged that appellant inserted his penis into a male child's anus and thereby caused serious bodily injury by infecting the child with the Human Immunodeficiency Virus ("HIV"). Appellant raises five points of error contending the evidence is insufficient to sustain an element of the offense. We affirm.

In his first point of error, appellant contends that a videotape seized from his home pursuant to a warrant was improper-

ly admitted as evidence. The videotape showed appellant and the victim engaged in homosexual activity.[1] Appellant contends that the affidavit supporting the warrant failed to state facts showing that appellant had such evidence within his residence. In response, the State contends that appellant has not preserved error because his appellate complaint does not comport with his trial objection. As the State notes, appellant filed a general motion to suppress and later filed a brief in support of the motion. In the trial brief, appellant mentioned the ground he now asserts on appeal, but he focused primarily on the prejudicial nature of the tape showing an extraneous sexual act. In its trial brief, the State succinctly responded to appellant's claim that no probable cause was shown. At trial, appellant renewed his "previous objections." The trial court admitted the videotape.

The affiant stated the facts to show probable cause as follows:

On the 16th day of June 1989, Officer Y.N. Trujillo of the Corpus Christi Police Department was contacted by [the victim's mother and the victim], age 15. [The victim's mother] and her family had been required to submit to a medical examination as part of an application for citizenship here in the United States. The examinations were performed in May 1989. In June of 1989 [the victim's mother] was informed that her son had tested positive for AIDS.

[The victim] stated that he had met Mr. Thomas Anthony (Tony) Zule in December of 1987. Tony Zule told [the victim] that he was looking for a young man to work for him around his home doing household chores. Tony Zule and [the victim] made arrangements for [the victim] to begin work around the Zule residence, located at 2718 Summer Ridge, in December of 1987. [The victim] did odd jobs for Tony Zule until May 1989. Dur-

ing this time, Tony Zule always had young men staying with him.

In August of 1988 Tony Zule began having sexual relations with [the victim].[2] The sexual relations eventually led to an episode of anal intercourse wherein Tony Zule put his penis inside the anus of [the victim]. This took place in front of several other young men who were staying with Tony Zule. One of these men was F— R—. F— R— had given a statement indicating that around the first part of May, Tony Zule had anal intercourse with [the victim] inside the residence of Tony Zule located at 2718 Summer Ridge.

Tony Zule would occasionally have group sexual activity with several young men simultaneously at his residence. He would also on occasion take photographs and video tapes of young boys engaged in sexual activities with him. Photographs and video tapes of these activities are believed to be kept in the residence. Tony Zule keeps a book known as "The Birthday Book" which contains names and birthdates of men and boys he had sexual relations with. The book contains approximately 100 names. It is believed that this book is also kept at the residence at 2718 Summer Ridge.

A safety deposit box is believed to contain photographs and or videotapes which depict sex acts between Tony Zule and young boys. The name of this bank is unknown but it is believed that documentation of this safety deposit box may be located in the above described residence. [The victim] has stated that he knows Tony Zule keeps photographs and or video tapes of [the victim] in the safety deposit box.

On the basis of this affidavit, the magistrate issued a warrant allowing the search of appellant's residence for videotapes which showed appellant engaged in sexual acts with boys.

---

1. The videotape showed appellant hitting the victim's bare bottom with a stick, appellant apparently rubbing the victim's genitals, and appellant massaging the victim's bottom.

2. Some time after this affidavit was prepared, the victim stated that the anal intercourse actually occurred around Christmas, 1987. The date on which the intercourse occurred is relevant to the sufficiency and corroboration points of error.

In reviewing the sufficiency of an affidavit, an appellate court uses the "totality of the circumstances" analysis. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex. Crim.App.1988); *Hennessy v. State*, 660 S.W.2d 87, 90 (Tex.Crim.App.1983); *see Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *Eisenhauer v. State*, 678 S.W.2d 947, 952 (Tex.Crim.App.1984).

A search warrant must be read in a common sense and realistic manner. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim.App.1986). Although the sufficiency should be determined from the "four corners" of the affidavit, the magistrate can make reasonable inferences from the facts presented. *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex.Crim.App.1987). A warrant is not invalid merely because the officer failed to state the obvious. *Lagrone*, 742 S.W.2d at 662.

In this case, the affiant did not specifically state the factual basis for the belief that video tapes of the charged sexual acts were believed to be kept in appellant's residence. However, the affidavit recites that appellant would photograph and videotape young boys engaged in sexual activities with him at his home, and that he had sexual relations with the victim at his home with other young men present. It is a reasonable inference that since a number of sexual acts occurred in appellant's residence, and were photographed and taped, the resulting tapes showing appellant's sexual activity would be located there. Since the magistrate could draw such reasonable inferences from the facts stated,

the trial court did not err in overruling appellant's motion to suppress. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in denying his motion for directed verdict because the victim's testimony was not corroborated as required by Tex.Code Crim. Proc.Ann. art. 38.07. (Vernon Supp.1990).[3] Recently, in *Scoggan v. State*, 799 S.W.2d 679 (Tex.Crim.App.1990), the Court held that where a child 14 years of age or older is sexually assaulted, the testimony of the child must be corroborated unless the victim informed another person of the offense within six months. The child was fourteen years old at the time of the offense. The offense was reported about a year and a half after it occurred. Under *Scoggan*, the evidence must corroborate the victim's testimony.

The corroboration evidence must tend to connect the defendant with the commission of the offense. *Scoggan*, at 681, n. 5. It is not necessary that the corroborative evidence provide independent evidence of guilt sufficient to support the conviction. We find sufficient circumstantial evidence to corroborate the child's testimony. The essence of the offense is that appellant had anal intercourse with the minor victim and transmitted HIV to him. There is a videotape taken from appellant's safe deposit box showing sexual contact between the child and him. Appellant possessed photographs of the victim undressed with another young boy. Both appellant and the victim tested positive for HIV. Appellant was diagnosed as having HIV prior to meeting the victim. Appellant had homosexual liaisons and continued to engage in oral and anal intercourse despite having HIV. The victim testified that he

---

**3.** After making his motion, appellant proceeded to present evidence in his defense. In a number of cases, Texas courts have held that by presenting evidence after requesting a directed verdict, the defendant waives any error the trial court made. *See, e.g., Hafdahl v. State*, No. 69,646, Slip Op. at 7–8 (Tex.Crim.App. June 13, 1990) (not yet reported); *Sawyer v. State*, 697 S.W.2d 815, 818 (Tex.App.—Corpus Christi 1985, pet.

ref'd). Recently, the Court of Criminal Appeals has determined that a challenge to a judge's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683 (Tex.Crim.App.1990). In *Madden* the Court disavowed the waiver language in *Hafdahl*. Therefore, we must consider appellant's point as a challenge to the sufficiency of the evidence.

had never used intravenous drugs and that no one except appellant had penetrated his anus. Such evidence tends to connect appellant to the offense sufficiently to corroborate the victim's testimony.

■ Appellant argues that it is necessary that there be eyewitness testimony of the crime itself to corroborate the victim's testimony. He maintains the evidence is thus insufficient because there is no such eyewitness evidence. Appellant relies on *Grogan v. State*, 713 S.W.2d 705 (Tex.App. —Dallas 1986, no pet.) and *Heckathorne v. State*, 697 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). In these cases, the issue concerned the admissibility of the child's outcry statements. In both cases, the Courts of Appeals held that the outcry was admissible because there had been no eyewitness to the offense. These cases do not hold that eyewitness testimony is necessary to corroborate a victim's testimony. Appellant's second point of error is overruled.

In his third point of error, appellant contends that he was denied a fair trial because the State failed to timely disclose evidence that the victim had engaged in anal intercourse with another male, J.R., who was infected with HIV. Before trial, appellant sought to discover if the victim had engaged in such activity as a way of establishing that the victim could have received HIV from someone other than appellant. The State did not disclose any relationship between the victim and a male other than appellant. During trial in September, 1989, the prosecutor informed the trial court and defense counsel that he had just learned from Judy Hales, an AIDS counselor, that the victim had previously engaged in anal intercourse with J.R., who had tested positive for HIV. In a hearing outside the jury's presence, Hales testified that she had learned in July, 1989, that the victim had anal intercourse with J.R. in March or April of 1989. Hales testified that she believed she had told this fact to an officer assigned to the case. When the information was given to appellant during trial, J.R. was apparently out of state, but

appellant had caused to be issued a subpoena for him, which was as yet unserved.

■ Appellant does not contend that the prosecutor personally knew of this information before trial, but argues that since the officer knew it the State was obligated to disclose. The State is responsible for disclosing favorable evidence known by its agents, including police officers, even if the particular evidence is not known to the prosecuting attorney. *See, e.g., Ex Parte Adams*, 768 S.W.2d 281, 292 (Tex.Crim. App.1989); *O'Rarden v. State*, 777 S.W.2d 455, 457 (Tex.App.—Dallas 1989, pet. ref'd).

■ In the present case, we find no reversible error. First, appellant did not actually establish that the police officer knew the allegedly exculpatory information. All that was established was that Hales believed she told him. Second, even if the officer knew, we find that error was not preserved. In *Wallace v. State*, 458 S.W.2d 67 (Tex.Crim.App.1970), the Court held that the defendant could not complain on appeal about the suppression of evidence where he was aware of the material before the jury retired. In a similar case, the Court noted that the defendant made no request for a continuance following the disclosure of allegedly exculpatory evidence during trial. *See Juarez v. State*, 439 S.W.2d 346 (Tex.Crim.App.1969). While appellant moved for a mistrial after the prosecutor disclosed the evidence, appellant did not move for a continuance. By not requesting a continuance, appellant made the tactical decision to proceed with the trial, aware of the previously undisclosed evidence. Hence, appellant cannot credibly complain that the State's late disclosure forced him to defend the indictment without knowing that potentially favorable evidence existed. Further, we note that Hales testified before the jury that the victim had anal intercourse with another male, and the victim likewise testified to this fact before the jury. Under such circumstances, no reversible error occurred. Appellant's third point of error is overruled.

In his fourth point of error, appellant contends that the trial court erred in re-

fusing to permit him to call M—V— as a witness. A few days before trial, M—V— signed an affidavit in the defense attorney's presence. In the affidavit M—V— stated that the victim had told him that he had a number of male sexual partners. Such evidence, if testified to by M—V— at trial, would have impeached the victim's testimony that he only had sexual contact with appellant and the other male. In a hearing out of the jury's presence to determine whether evidence of the victim's prior sexual activity would be admitted, appellant examined M—V— about the affidavit. M—V— denied that the victim had ever made such statements. M—V— stated that the affidavit was not true. M—V— could not remember details surrounding the taking of the affidavit or why he would have stated the facts contained therein. The State then objected to the witness being allowed to testify. The State pointed out that the sole purpose for M—V—'s testimony would be to impeach the victim but that M—V— now denied his previous impeaching statements. Appellant argued that he had the right to call the witness and impeach him with the statement.

■ The new rules of criminal evidence do not prohibit a party from impeaching his own witness. See Tex.R.Crim.Evid. 607. Nonetheless, the rules do not permit a party to call a witness primarily for the purpose of impeaching the proposed witness with evidence that would be otherwise inadmissible. See Pruitt v. State, 770 S.W.2d 909 (Tex.App.—Fort Worth 1989, pet. ref'd). The federal courts, in interpreting the identical federal rule, have consistently reached the same result. See United States v. Sebetich, 776 F.2d 412, 429 (3rd Cir.1985); United States v. Johnson, 802 F.2d 1459, 1466 (D.C.Cir.1986); United States v. Hogan, 763 F.2d 697, 702 (5th Cir.1985); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984). M—V—'s out-of-court statement was admissible only as evidence to impeach M—V—. It could not have been admitted as evidence to impeach the victim. See Tex.R.Crim.Evid. 801–803.

Appellant further argues that M—V— may have recovered his memory had the trial court allowed him to be called as a witness. This same type of argument was raised and rejected in Hogan, 763 F.2d at 702. We likewise reject such argument. M—V— denied that the victim had ever told him the matters contained in M—V—'s prior statement. In addition, M—V— could not recollect why he made the statement. M—V— showed no sign that he would be willing to testify to facts which would have impeached the victim. As such, M—V—'s proffered testimony had no relevance. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant contends that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to show that appellant had caused serious bodily injury to the victim. Specifically, appellant contends that the State failed to show that the victim did not acquire HIV from the other male, J.R., who tested positive for HIV in June of 1989. The victim had tested positive for HIV based on blood tests taken on May 10, 1989. The state's theory was that the victim acquired HIV during sexual contact with appellant in December, 1987.

■ Appellant contends that the evidence shows an alternative path of transmission for HIV and therefore fails to establish beyond a reasonable doubt that appellant transmitted HIV to the victim. In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Baugh v. State, 776 S.W.2d 583, 585 (Tex. Crim.App.1989); Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); Castillo v. State, 739 S.W.2d 280, 287 (Tex. Crim.App.1987).

The evidence shows that appellant had anal intercourse with the victim around Christmas, 1987, and that appellant ejaculated into the rectum of the victim. At this time, appellant had already been diagnosed as carrying HIV as early as 1986. In

March or probably April of 1989, the victim and J.R. had intercourse, with the victim penetrating the anus of the other. The victim tested positive for HIV based on blood tests taken in May, 1989. J.R. tested positive for HIV in June, 1989, but had earlier tested negative in December, 1988.

The HIV diagnostic procedure tests for anti-bodies formed to attack the infecting virus. The time that it takes for anti-bodies to develop depends on the individual, but generally, one will not test positive for HIV until he has been infected for three weeks to six months, depending on several factors. Testimony from medical experts showed that the penetrated party is much more likely to contract HIV than the penetrator, and that it is more likely for a person to transmit HIV when he is in the latter stages of the infection. The evidence shows that appellant was in the latter stages of the infection. At best, the evidence raises a possibility that the other male was infected when the victim had sex with him in March or April, 1989.

A medical expert testified that to determine whether HIV was transmitted through a specific incident he would consider the type of sexual activity, the body fluid that was involved, and how infectious the infected person was. Because appellant penetrated the victim's anus, ejaculated, and was in an advanced stage of HIV, the expert testified that appellant was responsible for transmitting HIV to the victim. Although it is possible that the victim became infected by penetrating the anus of another individual shortly before his May blood test, the overwhelming evidence indicates that this possibility was not reasonable. The evidence shows only that this other male might have been infected at the time, and even if he was, he would have been in the initial stages of HIV. In addition, to test positive for HIV on May 10, 1989, the victim would have to have developed anti-bodies quickly after the incident.

Based on the above evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant, not the other male, infected the victim with HIV. The evidence is sufficient to sustain the conviction. Appellant's fifth point of error is overruled.

*The judgment of the trial court is affirmed.*