IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 





NO. 3-92-648-CR





STANLEY BLACKWELL,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 0920951, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING



 




 Stanley Blackwell appeals his conviction for sexual assault of a child. Tex. Penal
Code Ann. § 22.011 (West 1980 & Supp. 1994). In a single point of error, he challenges the
sufficiency of the evidence to corroborate the victim's testimony. We will affirm the trial-court
judgment.



BACKGROUND


 Blackwell was convicted for sexually assaulting a fourteen year-old child, "T.H." 
The child's own testimony provided much of the evidence at trial. He testified to the following
events.

 T.H. met Blackwell while waiting at a bus stop in his neighborhood. Blackwell
was walking his dog and approached the boy at the stop. They began talking about Blackwell's
dog. At some point, Blackwell suggested that T.H. could earn money by doing lawn work for
him at his ranch in Manchaca. T.H. gave Blackwell his address. Blackwell began visiting and
calling the boy at his home. 

 Blackwell called T.H. to see if he would do some mowing at his ranch. T.H.
agreed and Blackwell drove to his house and picked him up to take him to the ranch. On the way
there, Blackwell picked up another boy, Chris Newby, who also helped mow the ranch. 
Blackwell dropped them off at the ranch and told them he would be back in four hours.

 Several hours later, Blackwell picked up Newby and T.H. from the ranch. 
Blackwell stopped at a store to get some beer, and then drove the boys to his house. At first, all
three were in the living room, watching television. T.H. was lying on the couch. Blackwell
asked T.H. if he wanted to watch pornographic movies. T.H. did not reply, and Newby got up
and went to the back of the house. Blackwell went down the hall a couple of times, commented
about what Newby was doing in the back of the room, and then put a pornographic movie in the
VCR.

 T.H. started to get scared. Blackwell asked him if he liked what he was watching,
and T.H. said that he needed to go home. Blackwell replied that he was going to change his shoes
and would be right back. When Blackwell returned to the living room, he had on only his
underwear and a t-shirt. He went to the couch, knelt down beside T.H. and told him to take his
pants down. T.H. refused. Blackwell put his arms over T.H., held him down, and began taking
off T.H.'s jogging pants. He handed T.H. a magazine, which T.H. put over his face. Blackwell
then performed oral sex on T.H. When Blackwell finished, he got up and started walking back
down the hallway.

 T.H. immediately got up, pulled up his pants, rushed out the door, and ran across
the street. He ran about three-fourths of a mile to get to a telephone. As he was looking down
the street, he saw Blackwell driving in his truck one street over. He saw two people in the truck. 
T.H. reached a Seven-Eleven and called his mother to come pick him up. He told her that
Blackwell had tried to have sex with him. (1) 

 T.H.'s mother picked him up at the Seven-Eleven. While they were driving home,
they stopped at a Walgreens and called the police. T.H. did not want to hurt his mother, so he
minimized the story. He said he told the police more but he would not tell them the whole thing. 
Although T.H. had never given Newby his phone number, Newby called him when T.H. got
home. He told Newby he ran out of the house because Blackwell tried to have sex with him. 
T.H. has not had contact with either Newby or Blackwell since that day. 

 To corroborate T.H.'s testimony, three other witnesses testified at trial: T.H.'s
mother, Chris Newby, and Sergeant David Borden. Despite the testimony of these other
witnesses, Blackwell contends that there was insufficient evidence to corroborate T.H.'s
testimony. He therefore argues that there is insufficient evidence to support the conviction.



 DISCUSSION
 

 Article 38.07 of the Code of Criminal Procedure dictates the proof necessary to
support a conviction for the sexual assault of a child. At the time of trial, article 38.07 provided:



A conviction under Chapter 21, Section 22.011, or Section 22.021, Penal Code,
is supportable on the uncorroborated testimony of the victim of the sexual offense
if the victim informed any person, other than the defendant, of the alleged offense
within six months after the date on which the offense is alleged to have occurred. 
The requirement that the victim inform another person of the alleged offense does
not apply if the victim was younger than 14 years of age at the time of the alleged
offense. 



See Act of May 26, 1983, 68th Leg. R.S., ch. 382, § 1, 1983 Tex. Gen. Laws 2090, 2090; Act
of May 29, 1983, 68th Leg. R.S., ch. 977, § 7, 1983 Tex. Gen. Laws 5311, 5319 (Tex. Code
Crim. Proc. Ann. art. 38.07, since amended). T.H. was fourteen at the time of the alleged
offense. In such a case, former article 38.07 required that T.H.'s testimony be corroborated to
support a conviction unless he made an outcry to another person within six months after the date
of the offense. Id.; Scoggan v. State, 799 S.W.2d 679, 683 (Tex. Crim. App. 1990). Blackwell
argues there was no outcry witness or statement produced at trial, and the State does not dispute
this. Therefore, we must determine if the other witnesses testifying at trial sufficiently
corroborated T.H.'s testimony in order to uphold the conviction.

 The standard applied to corroborating evidence under former section 38.07 is the
same standard applied for accomplice witnesses. See Tex. Code Crim. Proc. Ann. art. 38.14
(West 1979); Scoggan, 799 S.W.2d at 681 n.5 (citing Nemecek v. State, 621 S.W.2d 404, 407
(Tex. Crim. App. 1980), overruled in part, 651 S.W.2d 746, 754 (Tex. Crim. App. 1983)
(opinion on rehearing adopting original concurring opinion as majority opinion)). The
corroborating evidence must tend to connect the defendant with the commission of the offense. 
Scoggan, 799 S.W.2d at 681 n.5; Zule v. State, 802 S.W.2d 28, 32 (Tex. App.--Corpus Christi
1990, pet. ref'd). It is not necessary that the corroborating evidence provide independent evidence
of guilt sufficient to support the conviction. Zule, 802 S.W.2d at 32. Rather, to test the
sufficiency of the corroborating testimony, we must eliminate from consideration the victim's
testimony, and then examine the evidence of the other witnesses to ascertain if it is of an
incriminating character which tends to connect the defendant with the commission of the offense. 
See Losada v. State, 721 S.W.2d 305, 308 (Tex. Crim. App. 1986) (applying article 38.14 for
accomplice witnesses). The conviction cannot stand if the corroborating evidence does no more
than point the finger of suspicion toward an accused. Id. 

 At trial, Chris Newby testified that Blackwell admitted to him that he and T.H. had
oral sex. An admission by the defendant provides sufficient corroboration. See Farris v. State,
819 S.W.2d 490, 495 (Tex. Crim. App. 1990), cert. denied, 112 S. Ct. 1278 (1992) (defendant's
admission to brother-in-law corroborated accomplice's testimony under article 38.14). Newby
testified to the following. Newby helped mow the ranch with T.H. and returned with T.H. and
Blackwell to Blackwell's home, where all three watched television in the living room. Newby
went to the back of the house, and at some point left Blackwell's house and went back to his own
home a block away. About forty minutes later, Blackwell showed up at Newby's home, saying
that T.H. ran off somewhere and asking him if T.H. was there. The two got in Blackwell's truck
and started looking for T.H. Blackwell was sweating, appearing nervous and worried. He told
Newby that he performed oral sex on T.H. Blackwell was "just all nervous and driving around
and asking me what he was going to do." He gave T.H.'s telephone number to Newby and
wanted Newby to talk to him and make sure that T.H. did not tell his mother.

 Newby also testified that Blackwell came to see him after he found out he was
going to be arrested. Blackwell was nervous and wanted him to come up with a story to explain
what happened. Newby suggested that Blackwell say that T.H. planned to use the lawn money
on alcohol and drugs, that Blackwell would not pay him for the mowing if he planned to spend
the money that way, and that T.H. promised to "mess him over" if he refused to pay him the
money.

 The admission by appellant, his nervousness, and his request for a cover story, all
connect him to the commission of the offense. However, Blackwell argues that the jury could not
rely on Newby's corroborating testimony because "no rational juror could reasonably find Newby
to be a credible witness." Blackwell relies on his cross-examination of Newby. 

 During cross-examination, Newby was unable to answer whether he made up the
part of his testimony about Blackwell coming to see him and asking Newby to come up with a
story. After Newby continually refused to answer this question, the court eventually retired the
jury to the jury room. Outside the jury's presence, the prosecutor asked Newby why he could not
answer the question. Newby replied that he did not want to do this, and that Blackwell had never
done anything against him. The trial court appointed an attorney for Newby and instructed him
on the offense of perjury. When the jury reconvened, defense counsel asked Newby about his
desire to recant part of the story. Newby agreed that he wanted to recant his story about
Blackwell's admission. However, when asked if the admission was the truth, Newby replied,
"Yes, it is, unfortunately," explaining that he therefore could not recant. Newby's testimony
broke down at the end when Newby began agreeing with whatever the defense asked, saying "if
you say so, man" and "there you go." On redirect, Newby explained his hesitation in testifying
against Blackwell. He stated that he was friends with Blackwell, similar to an uncle and nephew
relationship. Newby said he did not want to get Blackwell in trouble, but agreed that the
defendant had admitted to having oral sex with T.H. 

 While Newby broke down in his testimony toward the end, a jury was entitled to
believe that his testimony on direct was credible. See Farris, 819 S.W.2d at 495 (testimony
provided sufficient corroboration even though witness' credibility was undermined by inconsistent
testimony). The jury could rationally rely on his explanation that Blackwell was his friend and
he was reluctant to testify against him. The jury is the exclusive judge of the credibility of the
witnesses and of the weight to be given their testimony. Esquivel v. State, 506 S.W.2d 613, 615
(Tex. Crim. App. 1974). The jury can believe or disbelieve any witness or any portion of the
testimony. Hellums v. State, 831 S.W.2d 545, 547 (Tex. App.--Austin 1992, no pet.).

 Moreover, even if we eliminated Newby's testimony from consideration, T.H.'s
mother provided corroborating evidence as well. She testified that T.H. went to the ranch around
noon. Around eight o' clock in the evening of the offense, T.H. called her, sounding very
frightened and upset. He asked her to come pick him up. He told her that Blackwell had grabbed
his pants, that T.H. hit him and ran out the front door, and that "they" were chasing him. (2) T.H.'s
mother picked him up at the Seven-Eleven. As T.H. and his mother were driving home, they
decided to stop by the Walgreens and call the police. The police arrived at the Walgreens and
T.H. spoke with the officers. 

 These statements tend to connect the defendant to the offense: T.H. was in a
frightened state when his mother picked him up, having just left Blackwell's house; he told his
mother that Blackwell had grabbed his pants; and T.H. and his mother decided to talk to the
police. We hold that the evidence was sufficient to corroborate T.H.'s testimony. We overrule
Blackwell's point of error and affirm the trial-court judgment.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: June 8, 1994

Do Not Publish

1.   Unless otherwise specified, defense counsel did not object to the hearsay statements
in this opinion. Therefore, these statements shall not be denied their probative value. See
Tex. R. Crim. Evid. 802; Chambers v. State, 711 S.W.2d 240, 247 (Tex. Crim. App. 1986).
2.   When the mother first began to testify about where T.H. had said he was calling
from, defense counsel objected on the grounds of hearsay. The prosecutor argued that
her testimony constituted an outcry statement. The court retired the jury to hold a
hearing to determine if it was outcry. The court concluded it was not, but allowed the
prosecutor to ask the questions. When the jury was brought back in, the prosecutor
asked the mother what T.H. had told her. The mother testified about T.H.'s statement
that Blackwell grabbed his pants. The prosecutor then asked another question, and only
then did the defense make a hearsay objection. The objection to this statement, if any,
was untimely, and therefore, we may therefore consider this statement on review. See
Tex. R. Crim. Evid. 103, 802; Tex. R. App. P. 52(a); Chambers, 711 S.W.2d at 247; Ybarra
v. State, 855 S.W.2d 166, 168-69 (Tex. App.--Corpus Christi 1993, no pet.). We also note
that even without this incriminating statement, the mother's testimony tends to connect the
defendant to the commission of the offense.