

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00076-CR

JULIO TORRES PALOMO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28777

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Julio Torres Palomo was tried before a jury in Hunt County for the continuous sexual assault of two young girls, Ellen[1] and Cathy, found guilty, and sentenced to life in prison. On appeal, Palomo alleges that there was insufficient evidence to support his conviction, that he was denied effective assistance of counsel, and that the trial court erred in admitting outcry testimony and interview video each containing translations, in not appointing new counsel after a conflict of interest arose between Palomo and his trial counsel, and in failing to grant a continuance when the State failed to produce *Brady*[2] evidence until during trial.

We affirm the trial court's judgment, because (1) the translations do not bar admission of the outcry testimony or the interview video, (2) sufficient evidence supports the conviction, (3) appointing new counsel was not required, (4) the asserted *Brady* violation was not preserved for review, and (5) ineffective assistance of counsel has not been established.

*(1)     The Translations Do Not Bar Admission of the Outcry Testimony or the Interview Video*

In two of his points of error, Palomo posits that the trial court erred in admitting the outcry testimony of Charlene Ralph based on the translated forensic interviews of Ellen and Cathy, respectively, and in admitting the portions of their video interviews that contain English translations made by the interview translator. Both Ellen and Cathy were interviewed by Ralph, a forensic interviewer employed by the Hunt County Children's Advocacy Center (CAC). The

---

[1]We will refer to the two minor victims as "Ellen" and "Cathy," and to a third alleged minor victim as "Rose" in accordance with Rule 9.10 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 9.10. In addition, we will refer to the mother of Ellen and Cathy as "Cindy."

[2]*See Brady v. Maryland*, 373 U.S. 83 (1963).

record shows that Cathy did not require a Spanish translator, so her interviews[3] were conducted entirely in English. Hence, none of Ralph's testimony concerning Cathy's outcry testimony is based on a translation from Spanish, and the interview video contains no translations from Spanish.[4] Therefore, we overrule Palomo's point of error regarding Cathy's statement and interview.

At Ellen's interview, Claudia Alvarado, an employee of the Hunt County Sheriff's Department, served as a translator. Ralph asked all of her questions in English, and a number of those questions were answered by Ellen in English. Yet, many questions involved translations.

Alvarado testified that she has been employed by the Hunt County Sheriff's Department for four years and that she performs background checks. She speaks Spanish fluently and provides translation services for the sheriff's department. On this occasion, she provided translation

---

[3]Cathy was interviewed two times: on September 18, 2012, and October 17, 2012.

[4]At trial, Palomo objected to Ralph's testimony regarding Cathy's outcry statements as hearsay based on the State's claimed failure to supply a sufficient written summary of the statements as required by Article 38.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2014). He objected to Cathy's interview video containing her outcry statements based on a failure to comply with Article 38.072 and on hearsay. He does not bring error on appeal based on these objections. Article 38.072 provides, in part, that hearsay statements made by certain abuse victims are

   (b)    . . . not inadmissible because of the hearsay rule if:

     (1)   on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

       (A)        notifies the adverse party of its intention to do so;

       (B)        provides the adverse party with the name of the witness through whom it intends to offer the statement; and

       (C)        provides the adverse party with a written summary of the statement . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.072.

services at the CAC at the request of a Hunt County Sheriff's Department investigator. Although she does not have any special credentials or certifications, she said none are required for the sheriff's department or the CAC. She explained that a word-for-word translation from English to Spanish would not make sense in Spanish, but in this case she translated the questions exactly as they were asked. She also said that she did not add any of her own questions or add to the answers Ellen gave her. But, she acknowledged that, on two occasions, Ellen did not understand the question, and she had to make the question so Ellen could understand it.

Palomo argues that Alvarado's translations were unreliable and, therefore, the trial court erred in allowing Ralph, who testified as Ellen's outcry witness, to testify regarding any of Ellen's translated statements. He also argues that it was error to admit Ellen's video interview containing unreliable translations of statements made by Ellen in Spanish.

To the extent that Palomo's complaint relates to Ralph's testimony regarding Ellen's outcry statements, we find that he has failed to preserve this error for review.[5] At trial, Palomo objected to this testimony only as hearsay based on the State's claimed failure to provide him with a sufficient written summary of what Ralph was going to say. In response, the State argued that it had provided Palomo with a copy of the video recording of Ellen's forensic interview, thus providing sufficient notice under Article 38.072 of the Texas Code of Criminal Procedure of the outcry Ellen made to Ralph and what Ralph would say. Palomo then argued that the video was not sufficient and that Article 38.072 requires a written summary of the statement. After the parties

---

[5]Although the State has not raised this issue, "a court of appeals should review preservation of error on its own motion." *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (citing *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997)).

4

and the trial court discussed what acts are disclosed on the video, the trial court overruled the objection.

To preserve for appeal an issue involving the admission of evidence, the trial objection is required to inform the trial court why, or on what basis, the evidence should be excluded. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (citing *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campell, J., concurring)).[6] In order to preserve his complaint on appeal,

> all a party has to do . . . is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). However, the objection must be sufficiently clear so that opposing counsel and the trial court have an opportunity to address or correct the purported deficiency. *Ford*, 305 S.W.3d at 533. To determine whether the objection is sufficiently clear, we consider both the context in which the objection was made and the parties' understanding of it at the time. *Id.*; *Lankston*, 827 S.W.2d at 911; *see also Becker v. State*, No. 06-00-00236-CR, 2002 WL 576165, at *2–3 (Tex. App.—Texarkana Apr. 18, 2002, no pet.) (not designated for publication). When, from the context, it appears that the party failed to be sufficiently clear to the trial court, appellate courts do not hesitate to hold that the complaint has not been preserved. *Lankston*, 827 S.W.2d at 909.

When there is a general hearsay objection, it is usually considered a sufficiently specific objection. *Id.* at 910. Further, we have previously held that a hearsay objection to outcry testimony

---

[6]*See also* TEX. R. APP. P. 33.1(a)(1)(A) (error preserved only when record shows "complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.").

5

is sufficient to preserve for appeal more specific complaints under Article 38.072 of the Texas Code of Criminal Procedure. *Halbrook v. State*, 322 S.W.3d 716, 721–22 (Tex. App.—Texarkana 2010, no pet.) (citing *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990)). However, when a party makes a hearsay objection and the context of the objection fails to show the particular basis of the hearsay objection, or the party expresses a specific basis, it will not preserve a different complaint on appeal. *See Meyers v. State*, 865 S.W.2d 523, 524–25 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd.) (trial objection "under Rule 801, on hearsay" not sufficient to preserve argument that evidence contravened requirements of prior consistent statement under Rule of Evidence 801(e)(1)(B)); *see also Baxley v. State*, No. 05-99-00215-CR, 2001 WL 221607, at *5 (Tex. App.—Dallas Mar. 7, 2001, pet. ref'd) (not designated for publication)[7] (hearsay objection at trial focused solely on hearsay rule's exception for business records waived appellate argument that evidence was inadmissible as not falling under hearsay exception regarding public records). In this case, the record shows that Palomo's hearsay objection was specifically based on the State's purported failure to comply with the requirements of Article 38.072. Neither opposing counsel nor the trial court could have understood Palomo to mean he was objecting to Ralph's testimony to the extent it was based on an unreliable translation by Alvarado. Since his point of error on appeal regarding Ralph's outcry testimony does not comport with his trial objection, Palomo has failed to preserve it for our review.[8]

---

[7]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[8]Palomo also contends that Alvarado, not Ralph, was the first adult to whom Ellen complained, presumably because Ellen told Alvarado in Spanish and then Alvarado translated her statements into English. However, he does not provide any argument or authority to support this contention; therefore, he has waived this complaint. *See* TEX. R. APP. P. 38.1(i); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004).

6

Palomo did, however, preserve his point of error regarding the admission of Ellen's forensic interview video. The translation of an out-of-court statement that is otherwise admissible may be properly admitted, if the party who made the statement has either authorized the interpreter to speak for him or her or adopted the interpreter as his or her agent for the purposes of the translation. TEX. R. EVID. 801(e)(2)(C), (D); *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex. Crim. App. 2009). Otherwise, the translated out-of-court statement is inadmissible hearsay. TEX. R. EVID. 802. To determine whether Ellen authorized Alvarado to speak for her during the interview, we consider four factors: (1) who supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the qualifications and language skills of the interpreter; and (4) whether actions taken after the translated statement were consistent with the statement as translated. *Saavedra*, 297 S.W.3d at 348; *Diaz v. State*, No. 08-07-00323-CR, 2010 WL 109703, at *7 (Tex. App.—El Paso Jan. 13, 2010, pet. dism'd, untimely filed). We review the trial court's admission of the challenged video using an abuse-of-discretion standard. *Saavedra*, 297 S.W.3d at 349.

At trial, Alvarado testified that she is an employee of the Hunt County Sheriff's Department and that she provides translation services on behalf of the department. She stated that, on the date of the interview, she provided translation services at the CAC at the request of a Hunt County Sheriff's Department investigator. Therefore, we find that the State provided the interpreter, and this factor weighs against admissibility.

There was no evidence suggesting that Alvarado had any motive to mislead or distort. Alvarado testified that, for the most part, she was able to translate both Ralph's questions and

7

Ellen's answers word for word. She denied adding anything of her own to either the questions or the answers. At least twice, however, she found it necessary to rephrase the question when Ellen did not understand the word-for-word translation. Palomo was able to point to only one instance during the approximately twenty-minute interview in which he claimed Alvarado mistranslated one of Ellen's answers. Even then, Alvarado readily admitted that, if Ellen stated the phrase as Palomo claimed, then her translation would be incorrect. Under this testimony, we find no indication that Alvarado had a motive to mislead or distort Ellen's testimony. We find this factor weighs in favor of admissibility.

Regarding her qualifications and language skills, Alvarado testified that she speaks Spanish fluently and has provided translation services for the sheriff's department "[a] lot of times." On the video, she speaks to Ellen only in Spanish, and Ellen speaks to her almost exclusively in Spanish. Alvarado acknowledged that she does not have a certification as a translator, but that none is required to provide these services for the CAC or sheriff's department. Other than the one instance of claimed mistranslation noted above, Palomo did not challenge her qualifications or skills. We find that this factor is neutral.[9]

Finally, the fourth factor weighs heavily in favor of admissibility. At the interview, Ellen and Alvarado spoke to each other almost exclusively in Spanish. Ellen would readily answer the

---

[9]*Compare Saavedra v. State*, No. 05-06-01450-CR, 2010 WL 2028111, at *3–4 (Tex. App.—Dallas May 24, 2010, no pet.) (mem. op., not designated for publication) (translator, a records clerk with police department, was on approved list of department translators, but no specific details on background of translator or requirements for placement on approved list were offered so weighed against admissibility), *with Driver v. State*, No. 01-07-00386-CR, 2009 WL 276539, at *6 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (family member serving as interpreter who had translated two other police interviews with witness and who had demonstrated her language abilities weighed in favor of admissibility).

questions posed and continued to do so throughout the interview. In viewing the video, it is apparent that, when Ellen did not understand the question, she would let Alvarado know. Also, the reliability of the translation and the video was independently verified by the testimony Ellen gave at trial, which is substantially the same as the statements Alvarado translated to Ralph on the video. *See Trevizo v. State*, No. 08-12-00063-CR, 2014 WL 260591, at *6 (Tex. App.—El Paso Jan. 22, 2014, no pet.) (mem. op., not designated for publication).

We find that the trial court did not abuse its discretion in impliedly finding that Ellen authorized Alvarado to speak for her and in admitting the translated forensic interview video. Therefore, we overrule this point of error.

*(2)    Sufficient Evidence Supports the Conviction*

In two points of error, Palomo complains that the evidence was legally insufficient to convict him of continuous sexual assault. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

9

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Williams v. State*, 305 S.W.3d 886, 889 (Tex. App.—Texarkana 2010, no pet.). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Based on the indictment and the statute, the State had to prove that, over a span of thirty or more days, Palomo committed two or more acts of sexual abuse against Ellen, Cathy, or Ellen and Cathy.[10] *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014). The indictment alleged the following acts of sexual abuse: (1) indecency with a child by contact, by touching Cathy's genitals;[11] (2) indecency with a child by contact by touching Cathy's anus; (3) indecency with a child by causing Cathy to touch Palomo's genitals; (4) aggravated sexual assault by penetrating Cathy's anus with Palomo's sexual organ;[12] (5) aggravated sexual assault by causing the sexual organ of Palomo to contact or contact and penetrate Cathy's anus; (6) aggravated sexual assault by penetrating Ellen's anus with Palomo's sexual organ; (7) aggravated sexual assault by penetrating Cathy's sexual organ with Palomo's sexual organ; (8) aggravated sexual assault by causing Ellen's mouth to come in contact with Palomo's sexual organ; (9) aggravated sexual

---

[10]Section 21.02 of the Texas Penal Code requires proof that the defendant committed "two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims." TEX. PENAL CODE ANN. § 21.02(b)(1).

[11]*See* TEX. PENAL CODE ANN. § 21.11(a), (c) (West 2011).

[12]*See* TEX. PENAL CODE ANN. § 22.021(B) (West Supp. 2014).

assault by penetrating Ellen's mouth with Palomo's sexual organ; (10) aggravated sexual assault by causing the sexual organ of Palomo to contact Ellen's anus; (11) aggravated sexual assault by causing Palomo's sexual organ to come in contact with Ellen's sexual organ; and (12) indecency with a child by contact by touching Ellen's genitals. The indictment alleged Palomo committed these acts over a period of thirty or more days beginning on or about September 1, 2010, during which period Palomo was seventeen years of age or older and Ellen and Cathy were younger than fourteen years of age.

The State's indictment alleged a combined twelve acts of sexual abuse of the girls by Palomo. Palomo argues that, because there is insufficient evidence of five of the twelve alleged acts, the trial court's judgment should be reversed.[13] However, the State was not required to prove all of the acts of sexual abuse charged in the indictment. Rather, it was required to show, at a minimum, only that Palomo committed two of the alleged acts of sexual abuse against either Ellen or Cathy, or one of the alleged acts of sexual abuse against Ellen and one of the alleged acts of sexual abuse against Cathy during a period of at least thirty days. *See* TEX. PENAL CODE ANN. § 21.02(b)(1).

At the time of trial, Ellen was nine years old. Ellen testified that Palomo touched the front of her part, which she described as the part used for "peeing," and her butt, which she described as where she poops. She identified Palomo's hands and the part between his legs, which she identified as the part he uses for peeing, as what he used to touch the part she used for peeing and

---

[13]Palomo attempts to separate the acts committed against Ellen from the acts committed against Cathy and implies that the State had the burden to prove that Palomo committed continuous sexual abuse against both Ellen and Cathy in order to obtain a conviction. On appeal, Palomo does not challenge the sufficiency of the evidence relating to his or the girls' ages, the dates of the acts, or that the acts were committed over a period of thirty or more days.

11

to touch her butt. She said that all of the contact by Palomo was on the outside of her butt and front part. The contact happened "all the time," for "a long time," and while she was six to seven years old. She also said that, on one day, Palomo made her touch with her hand the part he uses to pee with and put his part in her mouth.

Cathy was twelve years old at the time of trial. She testified that Palomo had touched her chest and vagina with his hands, that he had put his penis in her butt, and that she had touched his penis with her hands. She said that his hands penetrated her vagina on several occasions and his penis penetrated her butt one time, on a different occasion. These actions began when she was nine or ten years old and stopped when she was eleven.

A child victim's testimony is sufficient to sustain a conviction for continuous sexual abuse of a child. *Reckart v. State*, 323 S.W.3d 588, 598 (Tex. App.—Corpus Christi 2010, pet. ref'd). Here, Ellen's testimony supported four of the alleged acts of sexual abuse, and Cathy's testimony supported four additional acts of sexual abuse. Both girls testified that the acts occurred over a period of at least one year. Therefore, the evidence is legally sufficient to support Palomo's conviction for continuous sexual assault of a child or children. We overrule these points of error.

*(3)    Appointing New Counsel Was Not Required*

Palomo also asserts that the trial court erred in denying his trial counsel's motion to withdraw after a conflict of interest arose between client and attorney. Before trial, Palomo's trial counsel prepared and filed an application for community supervision affirming that Palomo had never been convicted of a felony in this state or any other, which Palomo swore was true and correct. Since Palomo had previously been convicted of a felony in Texas, the State, in a separate case, charged him with aggravated perjury[14] and gave him notice that it intended to use this extraneous offense at the trial of this case. Palomo's trial counsel promptly filed a motion to withdraw contending he would be a witness since he had conversations with Palomo regarding the application for community supervision and witnessed his signing the affidavit in support of the application. At the hearing on the motion to withdraw, trial counsel argued that his withdrawal was warranted because he would now be a witness in the case. The State responded by representing to the trial court that it would withdraw its notice as to the aggravated perjury charge and would not use it in either the guilt/innocence or punishment phases of the trial.[15] Nevertheless, trial counsel maintained that there would still be a conflict, since he might still be a witness in the aggravated perjury trial. When questioned by the trial court, trial counsel admitted that his possible testimony in the aggravated perjury trial might not be adverse to his client. The trial court denied the motion to withdraw.

In this Court, Palomo argues that the trial court was required to allow his trial counsel to withdraw pursuant to Rule 1.06(b)(2) of the Texas Disciplinary Rules of Professional Conduct.[16]

---

[14]*See* TEX. PENAL CODE ANN. § 37.03 (West 2011).

13

He reasons that, as a result of the indictment, his trial counsel became a witness for the State against him and should not have been permitted to represent him in any capacity. While they are not controlling standards governing motions to withdraw, the Texas Disciplinary Rules are relevant in considering the merits of such motions. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). Because "[d]isqualification is a severe remedy," courts apply "an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic." *Id.* (citing *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399–400 (Tex. 1989, orig. proceeding)). The movant has the burden to show a specific violation of one or more disciplinary rules. *Id.*; *see also In re Posadas USA, Inc.*, 100 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, orig. proceeding). Evidence that shows only a remote possibility of a violation of a disciplinary rule will not justify disqualification. *Spears*, 797 S.W.2d at 656. We review the trial court's ruling using an abuse-of-discretion standard. *Id.* at 656 n.3.

As seen above, once the State agreed not to use the aggravated perjury charge in this case, Palomo's trial counsel was unable to identify any specific rule violation. Rather, he emphasized the possibility that he would be a witness in a future trial on the aggravated perjury charges. Nevertheless, he admitted that his possible testimony may not be adverse to his client. As a result, he was unable to articulate how his representation of Palomo in this matter became limited in any

---

[15]The appellate record shows that the aggravated perjury charge was not mentioned at any stage of the trial.

[16]Rule 1.06(b)(2) provides, in pertinent part, that "(b) . . . a lawyer shall not represent a person if the representation of that person: (2) reasonably appears to be or become adversely limited . . . by the lawyer's or law firm's own interests." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06(b)(2), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (West 2005) (TEX. STATE BAR R. art. X, § 9).

way.  The trial court did not abuse its discretion in denying trial counsel's motion to disqualify. We overrule this point of error.

*(4)      The Asserted <u>Brady</u> Violation Was Not Preserved for Review*

Palomo asks for reversal and a new trial based on the State's alleged withholding of mitigating or exculpatory evidence.  On the third day of testimony, the State was made aware of the existence of a forensic interview video made at the CAC of a third girl, Rose, who had allegedly accused Palomo of sexual abuse in 2008.  Although the State had previously subpoenaed the video from the CAC, it had been advised that the video could not be found and the State passed this information on to Palomo.  After a CAC trial witness informed the State's attorney that she was in possession of the video, the State promptly notified the trial court and Palomo of its existence. Palomo immediately made an oral motion for mistrial, claiming the video was exculpatory evidence that should have been produced before trial under *Brady v. Maryland*, 373 U.S. 83 (1963). Palomo asserted that the CAC was an agency of the State and that the district attorney was charged with knowledge of its existence.  The trial court denied the motion for mistrial.  Palomo then orally moved for a recess to watch the video and review it with his expert. Without ruling on the motion, the trial court noted that the weekend would give them a break, then testimony was resumed for the day.  The following Monday, before resuming testimony, Palomo acknowledged he had reviewed the video over the weekend and reasserted his oral motion for mistrial, which was denied. Palomo again orally asked for a continuance.  The next day, before the punishment phase began, Palomo again orally asked the trial court for a continuance, which was denied.  No written motion

15

for a continuance or motion for mistrial based on the State's failure to produce exculpatory evidence appears in the appellate record.

Although we have serious doubts that Palomo has shown his entitlement to a new trial under *Brady*,[17] we do not reach the substance of his arguments since we find that he has failed to preserve his complaint.[18] The *Brady* doctrine is founded on protecting the defendant's due process rights. *Brady*, 373 U.S. at 87. When *Brady* material is disclosed at trial, the defendant is given an opportunity to request a continuance to review the evidence, thereby satisfying *Brady*'s due process requirements. *Yates v. State*, 941 S.W.2d 357, 364 (Tex. App.—Waco 1997, pet. ref'd) (citing *Payne v. State*, 516 S.W.2d 675, 677 (Tex. Crim. App. 1974)). Requesting a continuance, however, is necessary to preserve any complaint based on a *Brady* violation. *Id.* (citing *Zule v. State*, 802 S.W.2d 28, 33 (Tex. App.—Corpus Christi 1990, pet. ref'd)). Here, Palomo made an oral motion for continuance. However, the Texas Code of Criminal Procedure requires that a motion for continuance be in writing and sworn to by a person with personal knowledge. TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2006). To preserve appellate review of a denial of a motion for continuance, a sworn written motion is required. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). A party who makes an unsworn oral motion for continuance

---

[17]Reversible error under *Brady* requires the defendant to show that

> "1)     the State failed to disclose evidence, regardless of the prosecution's good or bad faith;
> 2)     the withheld evidence is favorable to him;
> 3)     the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different."

*Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002) (quoting *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).

[18]*See* footnote 5.

16

forfeits the right to complain about its denial. *Id.* In *Anderson*, the appellant made an unsworn oral motion for continuance so he could secure his own DNA testing, which the trial court denied. *Id.* at 277–78. The court of appeals acknowledged that an unsworn oral motion generally preserves nothing for appeal, but held that, if the denial of an oral motion for continuance amounted to the denial of due process, then an appeal would be viable. *Anderson v. State*, 268 S.W.3d 130, 133 (Tex. App.—Corpus Christi 2008), *rev'd*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). It went on to find that the appellant "was deprived of the opportunity to present a complete defense" as a result of the denial of his oral motion. *Anderson*, 301 S.W.3d at 278. In reversing, the Court of Criminal Appeals held that there is no due process exception to the procedural requirements of Articles 29.03 and 29.08 and that due process rights, as well as the right to present a complete defense, may be forfeited by failing to comply with those procedural requirements. *Id.* at 280.

In this case, as in *Anderson*, Palomo failed to preserve any complaint on appeal by not filing a sworn, written motion for continuance. We, therefore, overrule this point of error.

*(5)     Ineffective Assistance of Counsel Has Not Been Established*

Finally, Palomo claims he was deprived of effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees an accused the right to effective assistance of counsel for his or her defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a conviction results from ineffective assistance of counsel, it denies the accused this valuable constitutional right. *See id.* at 687–88. The right to effective assistance of counsel does not mean, however, "errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

17

To prevail on his ineffective-assistance claim, Palomo must prove by a preponderance of the evidence (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that it is reasonably probable that, except for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694; *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011). For us to find that Palomo's trial counsel was ineffective, the trial record must affirmatively demonstrate his deficiency. *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). It is insufficient to show that his trial counsel's acts or omissions were merely questionable. *Id.* We presume that trial counsel had a sound trial strategy, and this presumption cannot be overcome unless there is evidence in the record of counsel's reasons for his conduct. *Ex parte Martinez*, 330 S.W.3d at 901. In determining whether the alleged deficiencies prejudiced Palomo, we presume that the jury acted in accordance with law. *Strickland*, 466 U.S. at 694. In assessing prejudice, "we look to the totality of the circumstances and evidence presented to determine if there is a reasonable probability that, but for Counsel's deficient performance, the result of the proceeding would have been different." *Martinez*, 330 S.W.3d at 903 (citing *Strickland*, 466 U.S. at 694). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Thus, we need not determine that trial counsel's performance was deficient if the appellant fails to demonstrate a reasonable probability that the outcome would have been different. *Strickland*, 466 U.S. at 697; *Martinez*, 330 S.W.3d at 901.

18

Palomo asserts that his trial counsel was deficient in (1) allowing him to file a sworn statement resulting in a perjury charge and creating a conflict of interest and (2) failing to request a continuance when the *Brady* material—the forensic interview of the third girl—was produced at trial. Regarding the first ground, Palomo claims (1) that the second *Strickland* prong is satisfied "merely because there was a reasonable likelihood that [he] would not have filed the sworn statement but for his trial counsel's acts and omissions," (2) that the filing of the sworn statement placed him at greater risk in the punishment phase, and (3) that trial counsel "placed himself at odds with his client and [had] to seek a withdrawal." He does not, however, point to anything in the record demonstrating a reasonable probability that the outcome of the trial would have been different. As we have already seen, the sworn statement and the resulting perjury charge was never mentioned by the State or Palomo at any stage of the trial. Thus, these matters could not have made any difference in the outcome of the trial. Palomo also fails to articulate how trial counsel's filing a motion to withdraw in any way affected his representation of Palomo at trial.[19]

In support of his second ground, Palomo claims that, had a continuance been properly requested and granted, his trial counsel would been able to review the *Brady* video with his expert and would have been able to use the video to show that the mothers of the victims and Rose were fabricating the stories. Further, he claims trial counsel had to change his strategy for trial and cross-examination.[20] Assuming, without deciding, that the trial court would have committed error

---

[19]The appellate record does not reflect any animosity or personal conflicts between Palomo and his trial attorney.

[20]Although Palomo failed to address these matters under this point of error in his brief, he did address them under his sixth point of error. Therefore, we will address them in the interest of justice.

in denying a properly asserted motion for continuance, the record does not support that the outcome of the trial would have, in reasonable probability, been different. After the video was produced during the guilt/innocence stage of trial, Palomo's trial attorney orally requested a recess in the proceedings to allow him to reevaluate his strategy in light of the video. He expressed a desire to compare the 2008 video with the 2013 video to help in that reevaluation. Before testimony resumed the following Monday, trial counsel orally moved for a mistrial and informed the trial court that the video relates to both an extraneous offense and the offense in general, mentions Cindy, Ellen, and Cathy, and impacts considerations of motive and bias, and, thus, would have caused him to have cross-examined Cindy differently. However, when asked why he would not be able to recall Cindy as a witness to go into these matters, trial counsel answered with vague references to "trial strategy." He also did not explain how any information regarding Palomo's relationship with Cindy or Rose's mother would not have already been available through his client.[21]

The record shows that, in fact, Palomo's trial counsel's theory and strategy of defense at trial was that Ellen and Cathy had fabricated their stories at the insistence of their mother, who wanted to obtain legal immigration status. During voir dire, trial counsel discussed with the jury panel "implanted memories," one parent making accusations against another parent for alternative motives, and a parent coaching a child until she gets the answer she wants. He continued this

---

[21]Palomo also points to testimony his trial counsel gave at the post-trial hearing on his motion for new trial on punishment and motion in arrest of judgment. However, all of this testimony is premised on him having access to Rose's 2008 video before trial. Therefore, it is irrelevant in assessing any harm that may have been caused by not obtaining a continuance during trial.

20

theme in his opening statement, urging the jury to look for the motive for the accusations, particularly the mother's motives. In his cross-examination of Cathy, he emphasized her initial statements to the investigator and Ralph denying that Palomo had touched her inappropriately. In cross-examining Cindy, he established her illegal immigrant status, her desire to become a citizen of the United States, and her knowledge that, if Palomo were found guilty, she would be able to apply for a visa under the Violence Against Women Act[22] (VAWA). He also established that an immigration attorney had told Cindy that it would be better to apply under VAWA after Palomo was convicted because that would allow her to legally remain in the United States with a work authorization. In addition, Cindy admitted that, if the jury found Palomo guilty, the first thing she would do is apply for a visa and, therefore, that it was important (to her) for the jury to believe Ellen and Cathy.

Palomo has been unable to articulate either in the trial court or on appeal how the granting of a properly filed motion for continuance would have changed anything about the trial. Particularly, he has been unable to show how it would have enabled him to more effectively develop his theory of fabrication and the motivations of the child victims' mother. Thus, he has failed to demonstrate a reasonable probability that the outcome of the trial would have been different. We conclude that the record does not support the conclusion that Palomo met the second prong of the *Strickland* test, and, therefore, we need not address the first prong. *See Martinez*, 330 S.W.3d at 904. Accordingly, we overrule this point of error.

---

[22]*See* 8 U.S.C.A. § 1101(a)(15)(U) (West, Westlaw current through Dec. 19, 2014).

We affirm the trial court's judgment.

Josh R. Morriss III
Chief Justice

Date Submitted:      February 4, 2015
Date Decided:        April 1, 2015

Do Not Publish

22